### No. 8765.

### STARK *v.* ROGERS.

Decided December 3, 1917.

Action to enforce specific performance of a contract for the sale of property purported to have been executed by a real estate broker under authority from the owner. Judgment of dismissal.

#### *Affirmed.*

1. REAL ESTATE BROKERS—*Contract by, to convey title.* A contract with a real estate broker to sell, confers upon him authority to produce a purchaser able, ready and willing to buy upon terms fixed by the owner, but gives him no power to bind or convey title unless there is a specific written agreement to that effect.

*Error to the District Court of Park County, Hon. John H. Denison, Judge.*

Mr. JOHN R. SMITH, Mr. H. B. WOODS, for plaintiff in error.

Mr. I. S. SMITH, Mr. JAMES A. ORR, for defendant in error.

MR. JUSTICE GARRIGUES delivered the opinion of the court.

## STATEMENT.

STARK brought this action as plaintiff against Rogers as defendant in the court below to enforce specific performance of a contract to convey certain real estate and personal property. The contract is signed by A. L. Patton as agent for the owner, and the controversy turns on whether Patton was authorized in writing to enter into a contract binding Rogers to convey the title. Rogers owned the "63" ranch with water rights near Hartzell in Park county, together with one thousand head of branded cattle, more or less, harness, saddles, wagons, farm implements, household furniture, tools, blacksmith shop, cows and horses, all of which he desired to sell. The evidence shows that Patton, a real estate broker living at Colorado Springs, heard the place was for sale and went up in September, 1913, to see Rogers about a sales agency. Rogers told him the place was for sale and after visiting the ranch, they talked over the terms and conditions and Patton was given an oral agency which in substance was, that if he found a purchaser, Rogers would sell for $50,000.00, the whole of the purchase price to be paid in cash, that is, there were to be no deferred payments or time given, and he agreed to give Patton $1,000.00 commission for his trouble. After returning to Colorado Springs, Patton concluded that for his protection, he should have an exclusive agency and so prepared such an agreement, also a prospectus which he mailed September 4th, with a letter to Rogers. In the letter he

stated: We are sending you herewith a copy of the prospectus we have issued, describing the 63 ranch and hope you will approve of it. We have submitted it to a good many people. In Denver, we have offered the property to a Mr. Ridenour, who is an agent, and in case he should find a buyer before we do, he of course would do the business through us. This gentleman asked us today what position we are in, in case he should secure a buyer, to not let the deal get away from us. We firmly believe we will sell the place very soon, but as our efforts are so scattered, we do feel that we should have at least an agreement of exclusive sale while we are dealing with the people mentioned as well as others that may turn up at any time. Hope you will see the matter as we do and return the brief agreement we are sending herewith.

The agreement mentioned, is as follows:

"AGREEMENT.

I hereby employ Mr. A. L. Patton, doing business as the Patton Realty Co. of Colorado Springs, Colo., exclusive agent to sell the property known as the '63' ranch, together with all cattle, horses, implements, land and water rights, for the sum of $50,000 net to me. This employment to remain in force while certain people whose names are mentioned in a letter of this date are being dealt with, or with others who may become interested within a reasonable time.

_____

                                                     Owner."

The prospectus described the ranch and personal property and among other things stated that Rogers desired to sell and had placed it all in the hands of the Patton Realty Company of Colorado Springs, for sale.

September 28, Rogers replied as follows:

                                        "Howbert, Colo.,
Mr. A. L. Patton,                        Sept. 28th, 1913.
        Colo. Springs.
Dear Sir:

I recd. the prospectus describing the 63 ranch. Everything seems to be all right except the agreement for me to

sign, giving you the exclusive right to sell the property. I don't feel like signing this agreement as there are several parties after me now to buy the property. If you are the first one to find a buyer who wants the property it would be all right. If a man comes to me with the ready cash to buy the property I want to be at liberty to sell my own property without asking any questions of any one.

If you can sell the property I will do just as I said I would by you. I never go back on any thing I say.

Yours very truly,<br>JOSEPH ROGERS."

This letter is the basis of plaintiff's cause of action and. he relies upon it as Patton's written authority to make a sales contract binding Rogers to convey the title.

February 24, 1914, Patton wrote Rogers that he had found a purchaser who would pay $60,000.00 cash after an inspection of the property and an examination of the abstracts. In this letter he states:

"I priced the place at $60,000 and Mr. Stark, who is evidently acting for some one else, has accepted it at that price.

Mr. Stark has agreed to pay $2,000 to show his intention to complete the payments when title is examined, which of course, he would have a right to do, and in the meantime to look the stock over to assure himself that everything is just as represented which, of course, he knows in advance is positively described as your reputation for integrity is such that no man would think of questioning it. But this is merely a matter of business, which every man expects and really desires.

My idea is, in view of the heavy snow, that it will take several weeks to fully turn over the place, but a substantial payment as is offered will logically complete the deal, except the preliminaries which will naturally follow, and I hope to hear from you right away so myself and Mr. Stark may come up to your place soon and make this payment, and talk the whole matter over as man to man.

We are to accept a payment of $2,000 to apply on purchase price, bal. to be paid as soon as the weather will permit an inspection of the property; and in case they fail to complete the payments, we are to keep the money so paid. This kind of an arrangement is simply a cash sale arranged to suit the bad weather, which I am sure you will appreciate as well as to appreciate that such an offer comes from those who are not triflers; for a substantial cash payment, such as is proposed, is sufficient evidence of good faith. I personally feel confident that you will sanction my ideas, and see that in every way I have had your welfare in mind, particularly when the bad weather is considered."

March 3, 1914, Patton telegraphed Rogers that himself and two others would be up on the noon train Thursday to see the place and wanted him to go with them if convenient. That they were prepared to make payment as per his letter. To which Rogers replied, that the road to the "63" ranch was impassable and not to come.

March 10, 1914, Patton prepared the sales contract upon which this suit was afterwards brought, but it was not signed at that time. Sometime between the 10th and the 18th, Patton and Stark visited the cattle ranch, Stark inspected the cattle and after they returned to Colorado Springs, the sales contract was signed and Stark paid Patton $2,000 in cash on the contract for which he took a receipt as follows:

"Colorado Springs, Colorado,
March 18, 1914.

Received of E. R. Stark the sum of two thousand ($2,000) the same being the payment of $2,000 provided for in the contract for the "63" ranch and personal property going with same, the same being located in South Park.

(Signed)    A. L. PATTON,
Agent for Joseph Rogers,
Owner."

The sales contract is as follows:

## "A CONTRACT.

Colorado Springs, Colorado,
March 10th, 1914.

This contract entered into this 10th day of March, 1914, between A. L. Patton, agent for Joseph Rogers hereinafter designated as the party of the first part and E. R. Stark hereinafter designated as the party of the second part.

WITNESSETH: The party of the first part agrees to sell the property with all water rights, cattle, horses and other chattels known as The Sixty Three (63) Ranch as described in a prospectus; a copy of which is herewith attached for the total sum of $60,000.00 Sixty Thousand Dollars. Said total sum is to be paid in cash in the manner hereafter set forth; $2,000.00 Two Thousand Dollars on the execution and delivery of this contract and the balance $58,000.00 Fifty-eight Thousand Dollars as soon as the party of the second part or his agents or assigns may inspect and invoice the cattle and horses on said ranch, provided however said inspection must be made and total payment completed on or before sixty days from this date. It is understood and agreed that the time here mentioned is given on account of weather conditions only and is not intended to extend time except in case of bad weather.

It is further understood and agreed that the party of the second part is to satisfy himself as to the number of cattle which is one thousand more or less and to consider Joseph Rogers released in every way in case the count may not be satisfactory in the future. Passing of title shall be considered as a release of any responsibility whatever.

Party of the first part as agent for said Rogers agrees to deliver good merchantable title to all pertaining to said ranch and to place papers in the hands of party of the second part for his inspection as soon as the first payment heretofore mentioned is paid.

It is further agreed that time is the essence of this agreement and that failure on the part of the second party to complete payment as above set forth shall be and is a for-

feiture of the amount already paid and may be retained by
said Rogers as liquidated damages. Except that in case
the cattle may not all be found or that the count may ap-
pear as being short of one thousand head all told then party
of the second part may demand the return of the two
thousand dollars above mentioned when he has shown con-
clusively that the number is short of one thousand but he
nor his successors or assigns may demand such return of
money for any other reason. In case count does appear to
be short and party of the second part accepts and settles
for said property then the act of his acceptance and pay-
ment shall be considered as a final release of said Joseph
Rogers.

A. L. Patton      (Seal)
Agent for Owner.
E. R. Stark      (Seal)

The following, copied from the prospectus, was endorsed
on the contract:

"This description of the "63" ranch belonging to Joseph
Rogers, of Howbert, Colorado, is an exact carbon copy, 'In
fact the same identical copy,' which was submitted to Mr.
Rogers by me for his approval and returned to me with his
letter of September 28, 1913, and is hereby made a part of
my agreement with E. R. Stark for the sale of said prop-
erty. In case this agreement is finally consummated by said
Stark, this description is to be considered the basis of sale.
A. L. Patton, Agent."

The next day, March 19, Patton sent Rogers the $2,000
by letter, in which he said:

I am very pleased to send you herewith cashier's check
received yesterday as part payment on the ranch. This
payment is enough to show that these people are in earnest
and are ready to take over the property just as soon as you
advise that they can see the bulk of the cattle and make
some kind of a count that will be reasonably satisfactory.
They are anxious to get it through as soon as possible.

\* \* \* This manner of dealing with the affair, I am sure, is in accordance with your wish as well as positive instructions to me; and this leaves you clear and absolutely released forever when place is turned over, which will be completed just as soon as you advise me so I may notify Mr. Stark that the roads are fit to get over. I would come personally and bring you this check, but some other business will detain me for a day or so, but will come up soon and talk with you, and at that time can get papers for Mr. Stark's examinations."

To which Rogers replied:

"Howbert, Colo.,
March 22, 1914.

Mr. A. L. Patton,
    Colorado Springs, Colo.
Dear Sir:
Your letter of the 29th with enclosures was recd. in due time. In reply will say I will return all enclosures to you, including check for $2,000. I don't want any money on my property until it is sold. When my "63" ranch and property is sold I will give a warranty deed for the whole of it, providing that the price agreed is spot cash. My price in the "63" ranch and property now is $62,000; this will be my price in the property for 2 weeks from today. Any time in two weeks from today $62,000 spot cash will buy the "63" property, cattle and ranch.

Yours truly,
JOSEPH ROGERS."

March 27th, Patton wrote:
"I was very much surprised to receive your letter returning the check for $2,000. You certainly authorized me to sell the ranch, cattle, horses, etc., for $50,000; I have done that and more. The sale was made practically on a cash basis. You could not expect that any one would place the entire purchase price in your hands without an opportunity to inspect the property and examine the title. I was ready with my party to go to the ranch to make this examination.

My letter of February 24th advised you fully of the negotiations which I had carried on with Mr. Stark, the price I had given and the terms of sale. To that you made no reply, nor did you in any way indicate to me that you did not desire to sell the property at the price and on the terms mentioned. On the contrary, after the telegram to you of March 3rd you replied on March 4th: 'Road Haver to "63" impassable. Don't come up now.'

From which I inferred, as I had a right to, that everything was satisfactory, except that it was impractical to visit the ranch at that time.

I have kept you fully advised of each step as it was taken. The parties with whom I have contracted in your behalf have shown their good faith. They are now, and at all times have been, ready, willing and able to complete the purchase. They insist upon your carrying out your part of the contract.

I also expect compensation for my services.

I am sure that when you consider the whole situation you will realize that you have made a mistake. I therefore suggest that you write me at once, fully ratifying the contract which I have made in your behalf, and indicating your willingness to do your part towards its completion.

I hold the check for $2,000 subject to your order."

The evidence shows that plaintiff was able, ready, willing and desirous to go ahead and complete the sale that Patton had negotiated. At the close of plaintiff's evidence the court on motion of defendant entered a judgment of dismissal and plaintiff brings the case here on error.

## OPINION:

1. Whatever may be the rule elsewhere, it is held by us that where real estate is placed in the hands of an agent with instructions, either orally or in writing, to sell, it confers authority upon the agent to produce a purchaser able, ready and willing to buy upon the terms offered by the owner, but gives the agent no authority over the title unless he is specifically authorized in writing to bind the title or

to enter into a contract binding the owner to convey the title.  *Buckingham v. Harris,* 10 Colo. 455, 15 Pac. 817; *Johnson v. Lennox,* 55 Colo. 125, 133 Pac. 744; *Springer v. City Bank,* 59 Colo. 376, 149 Pac. 253, Ann. Cas. 1917A, 520.  In the case of *Buckingham v. Harris, supra,* it is held that the employment of an agent to sell real estate, does not vest him with power over the title and although he produces a purchaser ready, able and willing to buy the property on the owner's terms, still the owner may decline to convey or complete the sale.  In *Johnson v. Lennox, supra,* it is held that where the purchaser brings suit upon a contract executed by an agent, to convey real estate, the burden is upon the plaintiff to show that the agent was not only authorized to negotiate the sale of the land, but that he was given authority in writing to enter into a contract with the purchaser binding the owner to convey upon the terms expressed in the sales contract.  In *Springer v. City Bank, supra,* the agent was authorized in writing to procure a purchaser and sell the land; held, that this only authorized him to find a purchaser able, ready and willing to buy upon the owner's terms, and did not give the agent authority over the title or to enter into a contract of sale with the purchaser binding the owner to convey the title.  In the opinion at page 381, it is said:

"It is a general rule that where real estate is placed in the hands of an agent, either verbally or by written instrument, to find a purchaser, or with instructions in general terms to sell, the agent is not thereby authorized to enter into a contract of sale binding upon the owner, as in either instance the agent's authority extends only to finding a purchaser acceptable to the owner, and to negotiating a sale generally between such purchaser and the owner.  The use of the words 'to sell' in such a case is held to mean no more than to authorize the agent to find a purchaser.  This doctrine is firmly settled in this jurisdiction."

We think the lower court entered the proper judgment, and it will be affirmed.

Chief Justice White and Mr. Justice Scott concur.