CHAPMAN ET AL., APPELLEES, *v.* KNICKERBOCKER
AMUSEMENT CO. ET AL., APPELLANTS.

(No. 4212—Decided January 25, 1949.)

Messrs. *Power, McConnaughey & Griffith*, for appellees.

Messrs. *Key & Butler*, for appellants.

MILLER, J. This is an appeal on questions of law from two judgments of the Municipal Court of Columbus, finding each of the defendants, appellants herein, guilty of forcibly detaining the property of the plaintiffs, appellees herein.

The record discloses that on August 31, 1947, the plaintiffs entered into a written lease for a three-story building known as the Knickerbocker Theatre Building with a corporation known as Knickerbocker Burlesque, Inc., the name being changed later to Gayety Theatre, Inc. The building consisted of a theatre, restaurant and various other business show-

rooms and offices. On the same day, namely August 31, 1947, Knickerbocker Burlesque, Inc., entered into a sublease with Knickerbocker Amusement Company with respect to all this building excepting that portion which constituted the theatre auditorium. This sublease contained substantially the same terms as the prime lease and was for the same period of time. Each of these instruments permitted the subletting of the premises without the consent of the lessor. The sublease was recorded with the county recorder of Franklin county, and was offered and admitted in evidence. The prime lease was not recorded and was not offered in evidence. Knickerbocker Amusement Company, being in possession of the entire building with the exception of the theatre auditorium, subsequently entered into subleases with other tenants for various portions of the building. One of these subtenants was Continental Amusements, Inc., an appellant herein, whose appeal will be later considered.

The record discloses further that sometime prior to June 1, 1948, the lessee under the prime lease indicated to the plaintiffs it was considering abandoning its lease and asked for a little extension of time to see what it could decide upon. It finally decided to abandon the lease and vacated the theatre, which was the only part of the building retained by the prime lessee, on or about June 10, 1948. The plaintiffs thereupon resumed possession of the entire building and proceeded to notify the other occupants of the building of the abandonment and requested that arrangements be made with them should they desire to continue their occupancy.

Appellant Knickerbocker Amusement Company is basing its appeal on a fact which we find is not supported by the record. It is urging, as a matter of law, that, (1) the prime lessee tendered a surrender of its

lease; and, (2) that the plaintiffs accepted the surrender. The entire record is destitute of any affirmative evidence in this connection. However, the appellant urges that an offer to surrender and acceptance of surrender arise by operation of law. The burden of proving a surrender was upon the appellant, for it is a generally recognized principle that he who asserts the affirmative of an issue has the burden of proving it. The burden of proof as to any particular fact lies on that person who wishes the court to believe in its existence, unless it is otherwise provided by law. 17 Ohio Jurisprudence, 142, Section 113. In connection with the implication of a surrender by operation of law, it is said in 32 American Jurisprudence, 766, Section 905:

"A surrender of a lease by operation of law results from acts which imply mutual consent independent of the expressed intention of the parties that their acts shall have that effect; it is by way of estoppel. However, the intention of the landlord to accept the tenant's surrender of the premises is important on the question of surrender by operation of law, and a surrender will not be implied against the intent of the parties, as manifested by their acts; when such intention cannot be presumed without doing violence to common sense, the presumption will not be supported. It has been said that a constructive surrender of demised premises by operation of law can be evolved from the acts of the parties only when the intent to accept a proffered surrender is made reasonably clear and unequivocal, or is the logical and necessary result of the landlord's conduct."

Further, it appears in 32 American Jurisprudence, 770, Section 911:

"The purpose of a landlord to secure a new tenant and his negotiations with a prospective tenant to that

end, after an abandonment of the demised premises by a tenant before the expiration of his term, although the landlord has accepted the keys and possession of the premises to protect them, but has not accepted exclusive possession, do not establish that the landlord has accepted a surrender of the lease. This is true whether or not the landlord's efforts and negotiations to obtain a new tenant are successful. It is likewise true even though he obtains a tenant for a term longer than the original term. In other words, there is no acceptance of the surrender of the old lease at least until the execution of the new lease, and even then, even when the new lease is executed, it has been held that there is not necessarily an acceptance of the surrender of the old lease. As in the case of an actual reletting, the question whether the landlord's purpose in his efforts to relet and such efforts do, in themselves, constitute an acceptance of a surrender depends on the intent that underlies such purpose and efforts; if it is to relet for the benefit of the tenant to reduce the damages for which he is liable, there is no acceptance of the surrender. The mere entry and taking possession of premises abandoned by a tenant, for the purpose of leasing them, is, at best, an equivocal act not amounting to an election by the landlord between an acceptance of surrender terminating the lease and his right to relet for the purpose of mitigating the damages for which the tenant is liable. * * *''

See, also, 2 McAdam, Landlord and Tenant (5 Ed.), 1359, Section 322.

We find nothing in the evidence which evinces an indication to surrender by the prime lessee, nor any acceptance of surrender by the lessors. The only evidence on this question was that of Chapman, one of the plaintiffs, who testified that prior to June 1, 1948, a request for an extension of the payment of the June

rent was made; that on June 1st, the prime lessee quit paying rent; and that it moved its property from the building and notified him that it was done. It was after all this had occurred that Chapman notified the other occupants to contact him if they desired to remain in the premises. This evidence clearly establishes a breach of condition of the lease for nonpayment of rent and a forfeiture by abandonment. Where a landlord re-enters on breach of a condition a sublessee's rights are no greater than those of the lessee, and the cancellation of the lease by its own terms as to one, cancels it as to all. See 7 L. R. A. (N. S.), 221, 222, and cases cited. In 2 McAdam, Landlord and Tenant (5 Ed.), 1051, Section 244, it is said:

"The under tenant is chargeable with knowledge of the contents of the original lease. Notice of the lease is generally notice of its contents.

"The subtenant's rights are measured by those of his immediate landlord, the original tenant, and while they cannot be cut down by some new dealings between the principal lessor and lessee, yet where the principal lease comes to an end by an act done within its very terms, the subtenant's right of possession falls with it, for 'the cancellation of the lease, by its own terms, as to one cancels it as to both.' "

See, also, 32 American Jurisprudence, 344, Section 424.

The next error assigned is that the court committed prejudicial error in the sustaining of an objection by the plaintiffs to the introduction of certain evidence by appellant Knickerbocker Amusement Company. It will be noted, however, that the court at a later date changed its ruling and allowed this evidence to be admitted. Any error it made was, therefore, properly corrected. We find no error in the record as to such appellant and the judgment is ordered affirmed.

We will next give consideration to the errors assigned by Continental Amusements, Inc., which was likewise a subtenant in the same building.

The record discloses that one of the defendants against whom a judgment was rendered was ''Roxy Grill, also known as Roxy Club''; that after judgment, on motion of the plaintiffs, the court allowed the petition to be amended by changing the name ''Roxy Grill,'' etc., to ''Continental Amusements, Inc.,'' thereby making this appellant subject to the judgment which had been entered against the appellant Knickerbocker Amusement Company. Appellant Continental Amusements, Inc., reserving its entry of appearance to the sole purpose of the motion, moved the court for an order setting aside, vacating and opening up the judgment for the purpose of allowing it to defend the action. This motion was based on the stated reason that the judgment to which such appellant was made a party by amendment after judgment, was rendered without service upon it and that during the pendency of the action no actual notice thereof was had in time to appear and make its defense; accordingly, with the filing of this motion another motion to quash the writ of restitution issued against it was filed. Each of these motions was overruled, which are the errors being urged upon this appeal.

The evidence discloses that Continental Amusements, Inc., was operating as a subtenant a restaurant known as the ''Roxy Grill,'' which was named as a party defendant. The return on the summons upon the Roxy Grill shows that it was served upon William Pancake with no identification as to his relationship to the Roxy Grill. The first error assigned by this appellant is that the court erred in amending the petition after judgment by changing the name ''Roxy Grill,'' etc., to ''Continental Amusements, Inc.'' This

amendment was permissible under Section 11363, General Code, which provides:

"Before or after judgment, in furtherance of justice and on such terms as it deems proper, the court may amend any pleading, process, or proceeding, by adding or striking out the name of any party, or by correcting a mistake in the name of a party or a mistake in any other respect, or by inserting other allegations material to the case, or, when the amendment does not substantially change the claim or defense, by conforming the pleading or proceeding to the facts proved. When an action or proceeding fails to conform to the provisions of this title, the court may permit either to be made conformable thereto, by amendment."

In 31 Ohio Jurisprudence, 955, Section 348, the author says:

"The Code allows nearly the same liberty of amendment after judgment as, prior to the Code, was allowed before judgment. Under its liberal provisions, amendments to pleadings may be permitted after judgment, to bring in new parties, to make pleadings conform to proof, etc., when such amendment is in furtherance of justice and consistent with the rights of the parties to the action."

We are, therefore, of the opinion that the amendment was proper.

The next error assigned is that the court erred in overruling the motion of appellant Continental Amusements, Inc., to set aside, vacate and open up its judgment rendered by virtue of the amendment to the petition. This motion should have been sustained for the reason that the return of the summons does not show proper service upon this appellant. The return shows only that service was made upon William Pancake. There is no identification of William Pancake other than as an individual. The right to amend under

Section 11363, General Code, cannot eliminate the basic requirement that process must be served or an appearance entered before a judgment can be entered against any person or corporation. The statute expressly provides for the amendment of "any pleading, process, or proceeding," etc. Section 11288, General Code, provides the manner in which process may be served upon a corporation. Only such agents or officers may be served as are designated by law as possessing power to receive service.

In the case of *Towne* v. *National Machinery Co.*, 10 Ohio App., 265, at page 270, the court says:

"We are well aware of the rule that the statutory method of service of summons on a corporation is mandatory and must be strictly followed, and it naturally results that where the statute designates a particular officer or person or class of persons, on whom process shall be served, this requirement must be complied with in order to obtain jurisdiction. This rule is announced in various textbooks and in many adjudicated cases and admits of no uncertainty."

See, also, *Fee* v. *Big Sand Iron Co.*, 13 Ohio St., 563.

We are, therefore, of the opinion that the judgment against appellant Continental Amusements, Inc., is void for the lack of proper service of summons. The motion to quash the writ of restitution should have been sustained and the refusal of the court to do so constituted reversible error.

The judgment against appellant Continental Amusements, Inc., is reversed and the case is ordered remanded to the trial court for further proceedings according to law.

*Judgments accordingly.*

WISEMAN, P. J., and HORNBECK, J., concur.