No. 19,842.

SHELIA MATHER NUNNALLY, ET AL., *v.* AL HILDERMAN, JR.

(373 P. [2d] 940)

Decided July 2, 1962.   Rehearing denied August 27, 1962.

■■■■■■■■■■■■

■■■■■■■■■■■■

■■■■■■■■■■■■

Mr. WILLIAM H. ALLEN, Mr. WILLIAM C. STOVER, Mr. EUGENE E. MITCHELL, for plaintiffs in error.

Messrs. HOUTCHENS & HOUTCHENS, Mr. JOHN J. DOOLEY, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE MCWILLIAMS.

THE trial court held that Nunnally and Colburn authorized the Poudre Valley National Bank (hereafter referred to as the Bank) as "their agent to sell" for $6,000 approximately 160 acres of farm land jointly owned by them and situate in Larimer County, the purchaser to receive the 1959 soil bank payment in the amount of $720 as well as "any and all minerals" owned by Nunnally and Colburn; that the Bank as agent for Nunnally and Colburn did thereafter enter into a valid and binding contract with one Hilderman to sell the property for $6,000, and under these circumstances decreed that Hilderman was entitled to specific performance of the contract.

By writ of error Nunnally and Colburn seek reversal of the judgment, contending that the record does not support the findings and that the decree calling for specific performance is erroneous as a matter of law. For reasons set forth below, we conclude that this judgment is erroneous and must be reversed.

C.R.S. '53, 59-1-9 provides that "every instrument required to be subscribed by any party under 59-1-8

may be subscribed by the agent of such party, *lawfully authorized in writing."* (Emphasis supplied.)

In *Stark v. Rogers,* 69 Colo. 98, 169 Pac. 146 this Court in clear and unequivocal language declared that:

"Whatever may be the rule elsewhere, it is held by us that where real estate is placed in the hands of an agent with instructions either orally or in writing, to sell, it confers authority upon the agent to produce a purchaser able, ready and willing to buy upon the terms offered by the owner, *but gives the agent no authority over the title unless he is specifically authorized in writing to bind the title or to enter into a contract binding the owner to convey the title."* (Emphasis supplied.)

To like effect, in *Johnson v. Lennox,* 55 Colo. 125, 133 Pac. 744 it is stated:

"It is the rule of law that the authority of an agent conferring power to execute an executory contract for the sale of real estate must be in writing, and that the agent must be given therein specific authority to do, either the general business of his principal or the particular thing which he assumed to do. *Also, that the burden is put on the plaintiff who sues upon a contract thus executed, to show that the person who signed the contract as agent, was authorized, not only to negotiate the sale, but also to conclude in writing a binding contract within the terms, conditions and limitations expressed in the contract sued on.* Such an agent must strictly pursue his authority; and any person dealing with him is bound at his peril to learn the extent of that authority." (Emphasis supplied.)

Finally, in *Springer v. City Bank,* 59 Colo. 376, 149 Pac. 253 it was said:

"It is a general rule that where real estate is placed in the hands of an agent, either verbally or by written instrument, to find a purchaser, or with instructions in general terms to sell, the agent is not thereby authorized to enter into a contract of sale binding upon the owner, as in either instance the agent's authority extends only

to finding a purchaser acceptable to the owner, and to negotiating a sale generally between such purchaser and the owner. *The use of the words 'to sell' in such case is held to mean no more than to authorize the agent to find a purchaser.* This doctrine is firmly settled in this jurisdiction, . . . " (Emphasis supplied.)

In the instant case the trial court held that the Bank was authorized by Nunnally and Colburn "as their agent to sell" their property, and under the authorities above cited the court of necessity must have found that this authority embraced more than to merely find a ready, willing and able purchaser, but was in fact a specific authorization, in writing, empowering the Bank "to enter into a contract binding the owner to convey the title."

What is the evidence that would support such a finding? Hilderman argues that the following synopsized facts adduced upon trial fully justify this conclusion:

1. On inquiry by Hilderman as to whether the property was for sale, Nunnally informed him that the sale of the property had been turned over to the Bank and that he should contact the Bank;

2. Correspondence from Nunnally and Colburn to the Bank wherein each eventually agreed to sell their respective interest in said land for $3,000;

3. The fact that Nunnally signed a blank form of a special warranty deed then being used in Oregon and sent it to the Bank, which later returned the deed to her;

4. The fact that the Bank thereafter sent a blank form of a Colorado warranty deed to Nunnally, which form was in fact never signed nor returned;

5. The fact that Nunnally and Colburn were both non-residents of Colorado, Nunnally being a resident of Oregon and Colburn a resident of Kentucky, and that each accordingly "left everything up to the Bank."

We now hold that these evidentiary matters are insufficient to take this case out from under the rule announced in *Stark v. Rogers,* supra, and as a matter of

law do not constitute specific authorization in writing empowering the Bank to enter into a contract with Hilderman which would be binding on Nunnally and Colburn. Rather it simply empowered the Bank to find a ready, willing and able purchaser and to then transmit his offer to Nunnally and Colburn for their consideration and possible acceptance.

Hilderman alternatively argues that even if it be decided that the Bank had only the authority to locate a purchaser and did not have authority to accept an offer of purchase in behalf of Nunnally and Colburn that nonetheless Nunnally and Colburn ratified the contract of sale which, according to Hilderman, was entered into by himself and the Bank as agent for Nunnally and Colburn on June 6, 1959. According to Hilderman, and his testimony at this stage of the proceedings must be accepted as correct, he and the trust officer for the Bank verbally agreed on June 6, 1959, that he would buy the Nunnally-Colburn property for $6,000 and that he would be entitled to the 1959 soil bank payment and "any and all mineral rights" owned by Nunnally and Colburn. On this occasion Hilderman delivered to the Bank's trust officer his personal check in the amount of $1,000, this check being made payable to the Bank, and on the face of the check he wrote the following:

"Down payment S-E ¼ 10-9-68 with crop and min. and water. Bal. on approval of abstract."

The trial court specifically found that "Nunnally and Colburn by separate acts ratified the above described agreement, Nunnally by a telephone conversation with the plaintiff and Colburn by plaintiff's exhibit I." (It is parenthetically noted that it is believed the court inadvertently referred to plaintiff's exhibit I, when in fact it intended to refer to plaintiff's exhibit B.)

It is hornbook law that "ratification" as that word is used in the law of principal and agent is the "adoption and confirmation by one person with knowledge of all material facts, of an act or contract performed or

entered into in his behalf by another who at the time assumed without authority to act as his agent." (Emphasis supplied.) See Black's Law Dictionary, De Luxe Fourth Edition.

Hilderman contends that "ratification occurred by acceptance of benefits, orally by telephone calls and in writing through plaintiff's exhibit B." Let us examine the evidence which, according to Hilderman, would support such a conclusion.

Plaintiff's exhibit B is a letter written by Colburn's Kentucky counsel several weeks after Hilderman instituted the present action. This letter was addressed to Hilderman's attorney with copies thereof being thoughtfully sent to the trial court and the Bank. In this letter Colburn through her Kentucky attorney stated "that a sales price of $6,000 was agreeable with her." However, this same letter goes on to state, inter alia, the following:

(1) "she has been informed . . . that the 1959 Soil Bank payments must go to the Purchaser, however, if this is not customary, then she should be allowed a prorata share based on date of sale";

(2) "there seems to be a dispute as to the oil, gas and mineral rights. Mr. Beatty [a trust officer for Bank] knew that certain of these rights had been disposed of and if any misrepresentations were made, they were not made with the knowledge of Mrs. Colburn";

(3) "She is agreeable to a sale to Mr. Hilderman for $6,000. She further believes that she is entitled to a pro-rata share of income from mineral rights already disposed of; and a pro-rata share of any other income which she may be entitled to but of which she has no knowledge"; and

(4) *"Mrs. Colburn does not know the contents of the agreement entered into between Mr. Beatty personally or as agent of the Poudre Valley National Bank, Fort Collins, Colorado, with the purchaser, Mr. Hilderman. Please advise what was contracted for by Mr. Hilderman*

*and what is customary in similar circumstances."* (Emphasis supplied.)

■ The contents of plaintiff's exhibit B have been set forth in some detail because Hilderman's argument for ratification is primarily based on this document, which is somehow supposed to prove "ratification" not only by Colburn but by Nunnally as well. Instead of showing ratification, plaintiff's exhibit B actually shows an utter lack of ratification, and clearly demonstrates that Colburn did not have full and complete "knowledge of all material facts." Hence her request to learn "the contents of the agreement entered into between Mr. Beatty . . . with . . . Mr. Hilderman." We conclude that plaintiff's exhibit B does not, as a matter of law, constitute "ratification."

Very shortly after June 6, 1959, Hilderman called or caused to be called via long distance telephone both Nunnally and Colburn, and it is his position that each approved the sale to him of this land for $6,000. Even assuming that there could be "ratification by parol," which is contrary to the rule announced in *The People's Mining & Milling Company v. The Central Consolidated Mines Corporation*, 20 C.A. 561, 80 Pac. 479, the evidence again fails to affirmatively show that either Nunnally or Colburn had full and complete knowledge of all facts relating to the terms of the alleged contract. One additional fact of no doubt some importance was that apparently neither Nunnally nor Colburn at the time of these telephone calls knew that on or about June 8, 1959, one Kane made an offer to the Bank of $7,200 for this same property. We conclude that this testimony also as a matter of law falls far short of establishing ratification.

■ Finally, it is urged that Nunnally and Colburn ratified by accepting the $1,000 "down payment" made by Hilderman. In this respect the evidence discloses that the Bank cashed this check, kept the proceeds in its escrow account and eventually returned the money by its check to Hilderman, which check Hilderman has de-

clined to cash. In *Castner v. Richardson*, 18 Colo. 496, 33 Pac. 163 it was held that a down payment on the purchase price of realty made by a prospective purchaser to one claiming to be the representative of the seller is not binding on the seller in the absence of written authority in the agent to convey. In short, accepting Hilderman's version of the acts claimed to establish ratification as true and correct, we conclude that they are insufficient as a matter of law to constitute ratification.

Our resolution of this controversy on the grounds that the Bank did not have the authority to accept on behalf of Nunnally and Colburn the offer of purchase made by Hilderman, and that Nunnally and Colburn did not subsequently ratify the alleged contract between Hilderman and the Bank, should not be interpreted as indicating that in other respects Hilderman has sustained his burden of proof. There is substantial doubt as to whether there was a "meeting of minds" on the part of Hilderman and the Bank as to all of the essential and material elements of the purported agreement. Also there is genuine doubt as to whether there was a sufficient written memorandum to comply with the requirement of the Statute of Frauds, C.R.S. '53, 59-1-8. However, in view of our disposition of the matter these questions need not be considered.

The net result is that Nunnally and Colburn as the owners of realty may still sell to whomever they choose, even to the highest bidder, since as a matter of law they have not obligated themselves to sell to Hilderman.

The judgment is reversed and the cause remanded with directions to enter judgment in favor of Nunnally and Colburn.

MR. CHIEF JUSTICE DAY and MR. JUSTICE FRANTZ concur.