HOOPER, APPELLEE, *v.*
SEVENTH URBAN, INC., ET AL., APPELLANTS.

(No. 41009—Decided August 14, 1980.)

*Messrs. Wuliger, Jacob & Fadel* and *Mr. William T. Wuliger,* for appellee.

*Messrs. Schulman & Schulman* and *Mr. Milt Schulman,* for appellants.

JACKSON, J.   Appellant Seventh Urban, Inc., is the owner of real property located on Euclid Avenue. Appellant Milt Schulman is the sole shareholder of Seventh Urban. The lessee of the Euclid Avenue property is University Circle Property Development, Inc. (UCPD). The appellee, Mr. John D. Hooper, operated a shoe store on the Euclid Avenue property.

On July 7, 1978, Seventh Urban obtained a judgment in forcible entry and detainer against UCPD in the Court of Common Pleas of Cuyahoga County. Mr. Hooper, who leased his store from UCPD, was not a party to that action. The court's order reads as follows:

"This cause came on to be heard on the complaint of the Plaintiff, the answer of the Defendant and the evidence. A jury was duly impaneled and sworn. At the close of all the evidence the Plaintiff moved the Court for its order withdrawing the case from the consideration of the jury and entering judgment for the Plaintiff and against the Defendant. Motion sustained. Judgment is hereby rendered finding the Plaintiff's complaint to be true and judgment is therefore hereby rendered in favor of the Plaintiff on its complaint for restitution of the premises described in the complaint and for costs hereof." .

The complaint referred to in the order .of the trial court was not admitted in evidence.

On July 20, 1978, Mr. Schulman filed the following request (praecipe) with the clerk of courts:

"Issue Writ of Restitution in the above case directed to the Sheriff of Cuyahoga County to remove Winston Willis, all employees, and officers of University Circle Property Development, Inc., and the Rusty Scupper Theater, formerly known as the University Theater, as ordered by Judge George

McMonagle in this case on July 7, 1978, Journal Entry 406-952, returnable according to law."

The clerk issued a writ of *possession,* not a writ of restitution. The writ stated:

"To remove Winston Willis, all employees, and officers of University Circle Property Development, Inc. and the Rusty Scupper Theater, formerly known as the University Theater, as ordered by Judge George McMonagle in this case on July 7, 1978, Journal Entry 406-952.

"Property located at: 10616 Euclid Avenue
                         Suite 205
                         Cleveland, Ohio 44106"

This writ was returned unexecuted on September 22, 1978.

On September 28, 1978, Mr. Schulman filed another praecipe identical to the one filed on July 20, 1978, again requesting the issuance of a writ of restitution. The clerk again issued a writ of possession, which stated as follows:

"The Sheriff of Cuyahoga County, and or his appointed deputies, is hereby ordered to visit, the premises located at 10600-10608 Euclid Avenue, Cleveland, Ohio with an officer of the plaintiff, Seventh Urban, Inc., and determine what *tenants and occupants* are in the building and to determine whether any of the tenants and occupants are there under a lease.

"The Sheriff is also ordered to examine the premises physically. After the examination of the premises, the Sheriff *is then ordered to evict those tenants and persons designated by the owner from the premises* and deliver possession of the property to Seventh Urban, Inc., the Plaintiff." (Emphasis added.)

On October 2, 1978, Mr. Schulman accompanied two deputy sheriffs to the Euclid Avenue property. The deputies served "red tag" notices of eviction on the individuals operating businesses on the premises. The tags contained this language:

"COMMON PLEAS COURT
"Cuyahoga County
"623-6033
"FINAL EVICTION NOTICE

"Case No.            985  694

"Name            Occupant

"ATTENTION

"The Court has ordered you and all other persons to vacate and leave the premises you now occupy, known as

"        10600 - 10608 Euclid Avenue

"Unless this order is complied with by

"Date        October 13, 1978

your property and effects will be moved by us without further notice to you.

"COMMON PLEAS COURT

"By   Deps - Miller & Donald   "

A television news crew was present when Mr. Schulman and the sheriff's deputies served plaintiff-appellee, Mr. Hooper, and the proprietors of the other stores in the Euclid Avenue property with eviction notices, because appellant Schulman had informed the station of the time and place of the event. A film of the event was shown on the 11:00 o'clock news that evening; during the broadcast it was stated that Hooper's Shoe Repair was being evicted. Mr. Hooper testified that, from the date of the news program to the date of trial (seven months), his profits were down $50 per week because people thought he had been or was about to be evicted. He stated that he hired a lawyer the day he received the red tag. Mr Hooper's lawyer testified that he was working on a contingent fee basis, but that the reasonable value of his services to date was $3,500.

Mr. Wuliger, the attorney for UCPD, testified that he contacted the judge who issued the judgment of restitution in favor of Seventh Urban and told him that persons were being evicted who had not been named as defendants in the forcible entry and detainer action. Upon seeing a certain order (presumably the writ of possession issued September 28, 1978), the judge indicated that it was "not his order". On October 6, 1978, the trial court executed the following entry, which was filed on October 10, 1978:

"Motion to vacate final eviction notices heard.

"Counsel for plaintiff requests that the writ of restitution be withdrawn. Granted.

"Sheriff is ordered to forthwith return writ of restitution unexecuted."

On October 4, 1978, Mr. Hooper filed this lawsuit against Seventh Urban, Mr. Schulman, and several other defendants in the Cleveland Municipal Court. The claims against the other parties were dropped before trial. On May 7, 1979, the jury awarded Mr. Hooper $1,000 in compensatory damages, $4,000 in punitive damages, and $2,500 in attorney's fees. On the same date, by means of a separate journal entry, the court found Mr. Schulman guilty of contempt of court, and fined him $250 plus one day's jury fees. Appellants hereby appeal citing six assignments of error.

## I.

*First Assignment of Error:*

"A trial court errs in denying a defendant's motion to dismiss, when the complaint alleges only that the defendant made misrepresentations and that the plaintiff was damaged thereby, since such a complaint does not state a claim for relief under any theory of liability."

Immediately before trial the appellants made an oral motion to dismiss the complaint for failure to state a claim for which relief can be granted, pursuant to Civ. R. 12(B)(6). The court denied the motion.

The complaint alleged the following:

"1. On or about the 2nd day of October, 1978, the defendant Gerald T. McFaul, through his Civil Chief Deputy and two Deputy Sheriffs, represented to him [plaintiff] that an order of eviction had been granted against plaintiff in Common Pleas Court, Cuyahoga County, case number 985694.

"2. Said false representation was made as a result of representations made to said Sheriff by Milton Schulman and Agnes Schulman, both of whom are involved in an unknown manner with the defendant Seventh Urban, Inc.

"3. Representations made by defendants Schulman and defendants McFaul, Gunn, Donald, and Miller were well known to be false by the representers as the records of the Court of Common Pleas, Cuyahoga County, will indicate.

"4. As a result of said lies, plaintiff has had to hire an attorney and has incurred damages as a result of the lies of Milton Schulman, Agnes Schulman, and Seventh Urban, Inc.

"WHEREFORE, plaintiff prays for damages against the defendants in the amount of One Thousand Dollars ($1,000.) in compensatory damages, Eight Thousand Nine Hundred

Ninety-Nine Dollars ($8,999.) in punitive damages, his attorney's fees, and costs herein."

In their brief on appeal the appellants claim that the complaint is defective for the following reasons:

"The Complaint failed to allege that the defendant Schulman made any false representation 'with the *intent of misleading* (the plaintiff) into relying upon it.' It failed to allege '*reliance* upon it by the (plaintiff).' And it failed to allege that the plaintiff 'sustained injury *as a consequence of such reliance.*'"

Under Ohio law, a court may not dismiss a complaint for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts entitling him to recovery. *O'Brien* v. *University Community Tenants Union* (1975), 42 Ohio St. 2d 242.

Civ. R. 9(B) imposes an additional requirement that in fraud cases certain facts must be pleaded with particularity:

"(B) In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."

We find that the plaintiff's complaint alleges with particularity the circumstances constituting fraud. The alleged misrepresentation was that an order of eviction had been granted against Mr. Hooper. The complaint does not allege that Mr. Schulman made the misrepresentation directly to Mr. Hooper; rather, it alleges that the appellants' misrepresentations were conveyed to Mr. Hooper by the sheriff through his deputies, and that Mr. Hooper, as a result, hired an attorney and incurred legal expenses. The complaint also alleges that Mr. Schulman knew this statement to be false.

It does not appear from the complaint that the appellee could prove no facts entitling him to recover damages. The first assignment of error is overruled.

II.

*Second Assignment of Error:*

"A trial court errs in failing to grant a defendant's motion for a directed verdict in an action for fraud, where there is no evidence that the defendant misrepresented any fact, no evidence that he represented anything to the plaintiff, no

evidence that the plaintiff relied on any representations made to him, and no evidence that he was injured as a consequence of his reliance."

*Fourth Assignment of Error:*

"A trial court errs in allowing a recovery of damages by a subtenant who is merely served with a notice to leave premises, where his lessor has been evicted and his sublease and possessory rights have been extinguished."

This case was tried, and the jury was charged, solely on the theory that the appellants were guilty of fraud. The elements of fraud are:

" * * * (1) a false representation; (2) knowledge of the falsity on the part of the person making the representation; (3) intent to mislead others in relying upon the representation; (4) reliance, with a right to do so, upon the misrepresentation by the party claiming injury; and (5) injury resulting from that reliance." *Schwartz* v. *Capital Savings & Loan Co.* (1978), 56 Ohio App. 2d 83, 86.

There was substantial evidence that Mr. Schulman caused a representation to be made to Mr. Hooper that the Court of Common Pleas had issued an order of eviction against Mr. Hooper, and that Mr. Schulman intended for Mr. Hooper to rely upon this representation. We hold, however, that this representation was not materially false and that Mr. Hooper was not injured as a result of any "reliance" on the representation.

We are persuaded that appellant Schulman was not entitled to a writ of possession, following a favorable decision in the forcible entry and detainer action against UCPD in the Court of Common Pleas. A writ of possession is usually obtained by the purchaser of real property following a judicial sale or by the prevailing party in an action to quiet title. No specific form for a writ of possession is prescribed by law. The form of a writ of restitution, on the other hand, is prescribed by law:

"When a judgment of restitution is entered by a judge of a county court in an action under sections 1923.01 to 1923.14, inclusive, of the Revised Code, at the request of the plaintiff, his agent, or attorney, such judge shall issue a writ of execution thereon, in the following form, as near as practicable:

"The state of Ohio, . . . . county:

"To any constable of . . . . township; or

"To the sheriff of . . . . county:

"Whereas, in a certain action for the forcible entry and detention (or the forcible detention, as the case may be), of the following described premises, to wit: . . . . , lately tried before me, *wherein . . . . was plaintiff, and . . . . was defendant* . . . . judgment was rendered on the . . . . day of . . . . , A.D. . . . . , that the plaintiff have restitution of said premises; and also that he recover costs in the sum of . . . . You therefore are hereby commanded *to cause the defendant to be forthwith removed from said premises, and the said plaintiff to have restitution of the same;* also, that you levy of the goods and chattels of the said defendant, and make the costs aforesaid, and all accruing costs, and of this writ make legal service and due return.

"Witness my hand, this . . . . day of . . . . , A.D. . . . .

. . . . . . . . . . . . . . . . . . .
Judge, County Court"

(Emphasis added.) (R. C. 1923.13.)

A writ of restitution is directed *solely* to the defendant of a forcible entry and detainer action, not to "all tenants and occupants." Despite the differences in form, however, the purpose of a writ of possession and of a writ of restitution is the same: to restore the prevailing party to possession of the premises. R. C. 1923.14 describes the duty of the officer enforcing a writ of restitution:

"Within ten days after receiving the writ of execution described in section 1923.13 of the Revised Code, the sheriff, bailiff, or constable shall execute it by restoring the plaintiff to the possession of the premises, * * * ."

Appellant Schulman testified that he is an attorney and real estate consultant, and that he practices law in the areas of real estate, municipal law, and zoning. Schulman denied that he prepared the writ of possession for the clerk's signature. The jury could reasonably have inferred, however, that Schulman made use of the writ that was issued with knowledge that it was not in accordance with the statutory form for a writ of restitution.

The notice of eviction issued pursuant to the writ of possession stated that "[t]he Court has ordered you [Mr. Hooper] and all other persons to vacate and leave the premises * * * ." In fact, the court order was not addressed to

Mr. Hooper; it only ordered the issuance of a writ of restitution.

Mr. Hooper testified that he paid rent of $200 per month to UCPD. The lease, whether oral or written, between Mr. Hooper and UCPD was not introduced in evidence. Mr. Hooper was, at most, a subtenant of Seventh Urban.

Ohio courts have uniformly held that there is no privity of contract between the original lessor and a subtenant, and that therefore the lessor may not sue the subtenant for breach of a covenant contained in the original lease. *Crowe* v. *Riley* (1900), 63 Ohio St. 1, 9. Similarly, it has been held that a subtenant cannot maintain an action against the lessor on the original lease. *Coffman* v. *Huber* (1965), 13 Ohio Misc. 126, 128; *Powder* v. *Neiss* (1908), 7 N.P. (N.S.) 1.

It is also well settled that the subtenant's right to possession terminates when the rights of the original lessee (or its assignee) terminate. *Liberal Savings & Loan Co.* v. *Frankel Realty Co.* (1940), 137 Ohio St. 489; *Chapman* v. *Knickerbocker Amusement Co.* (1949), 85 Ohio App. 215. In *Chapman* the Court of Appeals stated:

" * * * Where a landlord re-enters on breach of a condition a sublessee's rights are no greater than those of the lessee, and the cancellation of the lease by its own terms as to one, cancels it as to all. See 7 L.R.A. (N.S.), 221, 222, and cases cited. In 2 McAdam, Landlord and Tenant (5 Ed.), 1051, Section 244, it is said:

" 'The under tenant is chargeable with knowledge of the contents of the original lease. Notice of the lease is generally notice of its contents.

" 'The subtenant's rights are measured by those of his immediate landlord, the original tenant, and while they cannot be cut down by some new dealings between the principal lessor and lessee, yet where the principal lease comes to an end by an act done within its very terms, the subtenant's right of possession falls with it, for "the cancellation of the lease, by its own terms, as to one cancels it as to both." ' " *Id.*, at 219.

The judgment of the trial court extinguishing the right of UCPD to possession of the Euclid Avenue property therefore terminated Mr. Hooper's right to possession as well.

So far as we can determine, the Ohio Supreme Court has never spoken on the issue of whether a subtenant may be

evicted under a writ of restitution even though it was not named as a defendant along with the prime tenant in the forcible entry and detainer action. The Court of Appeals for Franklin County has held that, if the subtenant is not made a party-defendant, it is entitled to have the writ of restitution quashed. *Chapman* v. *Knickerbocker Amusement Co., supra,* at 221-222. Our court has held that the proper remedy against a subtenant who allegedly has no right to continued possession is an action in forcible entry and detainer and not a criminal trespass action. *Williams* v. *Cleveland* (Cuyahoga Co. Ct. of Appeals, 1934), 16 Ohio Law Abs. 289. No judgment was rendered against Hooper personally, and the appellants were therefore not entitled to have the judgment against UCPD enforced against Hooper. The indisputable fact is, however, that the judgment against UCPD terminated Hooper's right to continued possession of the premises. The statements attributable to the appellants that the court had ordered Mr. Hooper and all other persons to vacate the premises were not materially false.

Furthermore, the only damages alleged to have been caused by appellants' statements were injury to Mr. Hooper's reputation (including loss of $50 per week profit) and attorney's fees. The proper remedy for an injury to reputation would have been an action for defamation; jury instructions on defamation were neither requested nor given. Furthermore, Mr. Hooper did not hire an attorney in reliance on the misstatement in the eviction notice, but because his continued possession of the premises was in doubt. Hooper's attorney testified that he subsequently defended Hooper in a forcible entry and detainer action brought by Seventh Urban,[2] and that he represented Hooper in the case at bar. Neither lawsuit stemmed from Hooper's "reliance" on the red tag.

We hold that the trial court erred in failing to direct a verdict in favor of the appellants. This assignment of error is well taken.

---

[2] The parties testified that Hooper prevailed in the other forcible entry and detainer action. No court records of that case were introduced in evidence. Since we are unable to determine what facts were raised, litigated, and adjudicated in that case, the judgment in Mr. Hooper's favor has no collateral estoppel effect on issues in the case at bar. See *State, ex rel. Kopchak,* v. *Lime* (1975), 44 Ohio St. 2d 3.

### III.

*Third Assignment of Error:*

"A trial court errs in failing to rule that a person assisting sheriff's deputies in executing a writ of possession, lawfully issued, is immune from liability for damages allegedly flowing from such execution."

Appellant Schulman cites *Wholesale Electric & Supply* v. *Robusky* (1970), 22 Ohio St. 2d 181, for the proposition that he, as representative for Seventh Urban, was not liable for any wrongful act committed by the court or the sheriffs in evicting the appellee. He quotes the syllabus of that case in support of his argument:

"A ministerial officer of a court and those acting under him and at his direction are immune from liability for any damages flowing from their obedience to process issued to such officer which appears *prima facie* regular and to have been issued by a tribunal possessing judicial powers with apparent jurisdiction to issue the same."

Appellant Schulman was not acting under, or at the direction of, the deputy sheriffs; instead, the deputies were directed to obey him. This assignment of error is without merit.

### IV.

*Fifth Assignment of Error:*

"A trial court errs in refusing to grant a mistrial when the plaintiff calls the defendant as his first witness for the purpose of introducing the defendant's character and credibility as an issue in the case, thereby inflaming the jury against the defendant."

Hooper's attorney called appellant Schulman to the stand to testify as on cross-examination, as permitted by statute:

"At the instance of the adverse party, a party may be examined as if under cross-examination, orally, by way of deposition, like any other witness, by way of written interrogatories filed in the action or proceeding, or by any one or more of such methods. The party calling for such examination shall not thereby be concluded but may rebut it by evidence." R. C. 2317.07.

The Ohio Supreme Court has expressly held that the testimony of a witness called under this section may be impeached:

"A witness called under this section may be examined 'as

if under cross-examination.' This provision was not intended to restrict the permissible scope of examination but to make clear that the ordinary rules governing direct examination are not applicable to this class of witnesses. Since such witnesses are likely to be hostile and evasive, the method ordinarily used on cross-examination, including leading questions and impeaching the witness, is allowed. * * * " *Oleksiw* v. *Weidener* (1965), 2 Ohio St. 2d 147, 148-149.

Moreover, the record shows that the appellants' objections were either sustained by the court or were withdrawn by the appellants. This assignment of error is overruled.

## V.

*Sixth Assignment of Error:*

"A finding of contempt against an attorney cannot be sustained where:

"A) The trial court's finding fails to set forth the precise facts upon which the finding of contempt was based;

"B) The record fails to disclose any conduct which would support a finding of contempt against an attorney;

"1. Schulman's attempt to call sheriff's deputies as hostile witnesses

"2. Schulman's request for a bench conference

"3. The testimony of Schulman

"C) The record and the trial court's finding of contempt fail to disclose any actual obstruction of the administration of justice;

"D) The trial court failed to provide the alleged contemnor with notice of the charges against him and an opportunity to be heard prior to imposing punishment upon him for the alleged contempt."

On May 7, 1979, after trial, the court entered the following order holding Mr. Schulman in direct contempt of court:

"Pursuant to Revised Code 2705.01 I find Milton Schulman guilty of the following of offensive and unethical conduct in open court during this trial and that said conduct constituted contempt of court. (1) He made insolent, insulting and offensive remarks to the court and counsel. (2) He persisted in repeating questions, previously excluded by the court to evade this court's rulings. (3) He used dilatory tactics to delay the progress of the trial and on several occasions made fake statements to this court:

"Fined $250.00 and one days Jury fees for a jury of eight."

On May 18, 1979, appellants filed a motion for a new trial which was denied on June 14, 1979. On June 23, 1979, appellants filed a notice of appeal from the denial of the motion for a new trial. Appellants filed a motion for leave to amend the notice of appeal on December 12, 1979, to permit them to appeal from the judgment in favor of Mr. Hooper and from the judgment of contempt against appellant Schulman. This court granted the motion on January 3, 1980. Upon further reflection, we note that the appellants' motion for a new trial did not speak to the judgment of contempt. The time for appeal from the judgment of contempt, which was a final order, was therefore not extended by the filing of the motion for a new trial.[3] This court therefore lacked jurisdiction to permit appellants to amend their notice of appeal to include an appeal from the judgment of contempt. Hence, this court also lacks jurisdiction to review appellant's sixth assignment of error.

Accordingly, the verdict of the trial court awarding damages against the appellants is reversed, and judgment is entered for the appellants. The appeal from the judgment of contempt is dismissed for want of subject-matter jurisdiction.

*Judgment accordingly.*

KRENZLER, C. J., and PATTON, J., concur.

---

[3] App. R. 4(A) establishes the time within which appeals must be filed:

"In a civil case the notice of appeal required by Rule 3 shall be filed with the clerk of the trial court within thirty days of the date of the entry of the judgment or order appealed from. A notice of appeal filed before entry of such judgment or order shall be treated as filed after such entry and on the day thereof. If a timely notice of appeal is filed by a party, any other party may file a notice of appeal within ten days of the date on which the first notice of appeal was filed, or within the time otherwise prescribed by this subdivision, whichever period last expires.

"The running of the time for filing a notice of appeal is suspended as to all parties by a timely motion filed in the trial court by any party pursuant to the Civil Rules hereafter enumerated in this sentence, and the full time for appeal fixed by this subdivision commences to run and is to be computed from the entry of the last of any of the following orders made upon a timely motion under such rules granting or denying a motion (1) for judgment under Rule 50(B); (2) for a new trial under Rule 59. A judgment or order is entered within the meaning of this subdivision when it is filed with the clerk of the trial court for journalization."