**V.O.B. COMPANY, a Partnership, Plaintiff-Appellant and Cross-Appellee,**

v.

**HANG IT UP, INC., a Colorado Corporation, Defendant-Appellee and Cross-Appellant.**

**No. 82CA1510.**

Colorado Court of Appeals, Div. III.

Nov. 1, 1984.

Mark A. Senn, Linda L. Siderius, Denver, for plaintiff-appellant and cross-appellee.

Girsh, Rottman and Bromberg, P.C., William L. Bromberg, Denver, for defendant-appellee and cross-appellant.

KELLY, Judge.

In this unlawful detainer action, the plaintiff, V.O.B. Company, appeals the judgment of the trial court in favor of the defendant, Hang It Up, Inc. The trial court ruled that Donald R. Roark, doing business as BKR Company, was acting as the agent of V.O.B. in executing several leases between BKR and Hang It Up and that V.O.B. is therefore bound by the latest of these agreements. V.O.B. argues that, because the lease between it and BKR had been previously terminated, the rights of Hang It Up were also terminated. We agree, and thus, we reverse.

On May 7, 1975, four documents were executed by Roark which are at the heart of this dispute. First, he entered into a partnership agreement with several other parties to do business under the name of "V.O.B. Company" and to engage in the business of purchasing, owning, managing, leasing, renting, and disposition of certain real property and improvements on Milwaukee Street in Denver.

Coincident with the execution of this partnership agreement, Roark, as a partner of BKR, conveyed to V.O.B., by warranty deed, the real property on Milwaukee Street in Denver which is the subject of the various leases involved in this litigation. At the same time, V.O.B. and BKR entered into a lease agreement whereby the Milwaukee Street premises were leased for a ten-year term which authorized BKR to assign or sublet the premises during the term of this lease.

To secure the performance of the lease agreement, Roark, as BKR Company, executed an "Assignment of Leases" in which he assigned to V.O.B. all existing or future lease agreements entered into by BKR. The warranty deed was recorded on May 8, 1975. The lease agreement and assign-

ment of leases were not recorded, however, until June 27, 1977.

BKR's first lease with Hang It Up was executed on August 29, 1975, and describes BKR as lessor and Hang It Up as lessee. The second and third leases were executed by the same parties as lessor and lessee, and are dated December 20, 1977, and January 5, 1981. None of these leases makes any reference to V.O.B., nor is there any explanation of the status of BKR other than as "the lessor."

In a prior civil action, V.O.B. sought possession of the Milwaukee Street premises and was granted a writ of restitution by the trial court. V.O.B. then terminated its lease with BKR. Thereafter, Hang It Up was served by V.O.B. with a notice to quit, which was followed by this action in unlawful detainer.

The trial court, having found the above facts, among others, concluded that Roark had apparent authority to lease portions of the Milwaukee Street property, that the leases with Hang It Up were within the grant of authority in the lease between V.O.B. and Roark, and that V.O.B., having entered into the assignment of leases with Roark, had ratified future leases and was estopped to deny the rights of Hang It Up. Since these findings and conclusions rest upon the trial court's interpretation of the documents before it, they are not binding on this court. *Klingensmith v. Serafini*, 663 P.2d 1058 (Colo.App.1983).

■ In support of reversal, V.O.B. urges us to apply the rule stated in 49 *Am. Jur.2d, Landlord and Tenant* § 511 (1970):

"The right of the sublessee to the possession of the premises, as against the original lessor, terminates with the lease or term of the original lessee, and since a subtenant holds the premises subject to the performance of the terms and conditions impressed upon the estate by the provisions of the original lease, his rights are generally held to be terminated when the original lessor declares a forfeiture of the original lessee's term based upon the latter's nonperformance of obliga-

tions imposed on him. Thus, if the original tenant has incurred a forfeiture of his lease, and for that reason the landlord annuls the lease, the landlord is entitled to the possession as against the sublessee."

We agree that these are the principles to be applied here. *Fifth & Broadway Partnership v. Kimny, Inc.*, 102 Cal.App.3d 195, 162 Cal.Rptr. 271 (1980); *Chapman v. Knickerbocker Amusement Co.*, 85 Ohio App. 215, 84 N.E.2d 283 (1949). The reason underlying this rule of termination is that there is no privity of contract between the original lessor and the sublessee. *See J.E. Martin, Inc. v. Interstate 8th Street*, 41 Colo.App. 203, 585 P.2d 299 (1978).

■ Hang It Up argues, nevertheless, that the lease agreements between BKR and Hang It Up are not "subleases" and that Hang It Up is not a "subtenant" because these words nowhere appear in the documents themselves. Hang It Up suggests that, because BKR was authorized by the lease with V.O.B. to assign, as well as to sublet, the failure to specify the documents as subleases justifies the interpretation that they are assignments.

In this context, the distinction between an assignment of a leasehold and a sublease is significant. *See Bonfils v. McDonald*, 84 Colo. 325, 270 P. 650 (1928); 3A G. Thompson, *Real Property* § 1225 (1981 Repl. Vol.). The argument of Hang It Up is, however, without merit.

"The distinction between an *assignment of a lease* and a *sublease* is that, in an assignment, the assignor transfers his entire interest in the lease in so far as it affects the property on which the lease is assigned; whereas, in a sublease, the original lessee, or sublessor, retains an interest in the lease in so far as it affects the property subleased—by imposing some obligation upon the sublessee in favor of the sublessor, such as an obligation to pay additional rent to the sublessor." *Gordon Investment Co. v. Jones*, 123 Colo. 253, 227 P.2d 336 (1951).

The leases we are here reviewing not only provide for payment of the monthly rent to BKR, but also fail to make any provision whatsoever for rights and duties flowing between Hang It Up and V.O.B. Thus, the documents fall "far short of establishing the basic elements necessary to create any novation or direct contractual relationship between [Hang It Up and V.O.B.]." *J.E. Martin, Inc. v. Interstate 8th St., supra.*

Nor is there any merit to the argument of Hang It Up that, because it was unaware of any limitations on BKR's authority to lease the property, the termination of its lease is inequitable. As demonstration of its blamelessness, Hang It Up points to the fact that it had been in possession of the premises for two years before the recording of the lease between V.O.B. and BKR elaborating the latter's authority. It further denies any affirmative duty on a prospective lessee to search the official records to determine the status of the title to property it is about to lease. Even if we accept the validity of these assertions, they are nonetheless inapposite.

The warranty deed by which BKR conveyed the real property to V.O.B. was recorded on May 8, 1975, four months before the first lease with Hang It Up. Under § 38–35–109, C.R.S. (1982 Repl. Vol. 16A) this recording constituted notice to the world of the nature of the interest of V.O.B. in the property. *Botkin v. Pyle*, 91 Colo. 221, 14 P.2d 187 (1932). Thus, Hang It Up had constructive notice that Roark and BKR were not the owners of the premises being leased.

Additionally, the recording of the lease between V.O.B. and BKR in June 1977 gave notice of the nature and limits of BKR's authority to enter into contracts concerning the property. *Cf. Page v. Fees-Krey, Inc.*, 617 P.2d 1188 (Colo.1980). Since BKR sublet the premises to Hang It Up, and since Roark's and BKR Company's rights under the lease with V.O.B. were terminated, the rights of Hang It Up, the subtenant, were likewise terminated. Hang It Up's arguments that the assignment of leases was an advance ratification

by V.O.B. of BKR's transactions is also without merit. *Nunnally v. Hilderman*, 150 Colo. 363, 373 P.2d 940 (1962).

In view of this conclusion, we need not address the argument of Hang It Up that it was entitled to attorney fees.

The judgment is reversed and the cause is remanded with directions to enter judgment in favor of V.O.B. for possession of the premises, and for such further proceedings as may be appropriate.

TURSI and METZGER, JJ., concur.