Margaret A. CAPASSO and James M. Capasso, her husband, Appellants,

v.

MINSTER MACHINE CO., INC., a corporation, Defendant and Third-Party Plaintiff in District Court,

v.

WESTINGHOUSE AIR BRAKE DIVISION, WESTINGHOUSE AIR BRAKE COMPANY (WABCO), Third-Party Defendant in District Court.

No. 75–1898.

United States Court of Appeals,
Third Circuit.

Argued Feb. 6, 1976.

Decided April 5, 1976.

---

Paul E. Moses, Evans, Ivory & Evans, Pittsburgh, Pa., for appellants.

George I. Buckler, Raymond H. Conaway, Meyer, Darragh, Buckler, Bebenek & Eck, Pittsburgh, Pa., for appellee Minster Machine Co., Inc.

Before SEITZ, Chief Judge and VAN DUSEN and WEIS, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Chief Judge.

This is an appeal from an order of the district court granting the motion of the defendant Minster Machine Company, Inc. (defendant) for a directed verdict at the close of plaintiffs' case.

Plaintiffs are husband and wife. They brought this diversity action to recover for personal injuries suffered by plaintiff wife while employed by the third party defendant, Westinghouse Airbrake Division of the Westinghouse Electric Company (Westinghouse). For convenience, the injured wife will be referred to as plaintiff.

Plaintiff suffered personal injuries while operating a power press machine used to trim excess rubber from various molded rubber parts. The machine was manufactured by defendant and sold to Westinghouse. As shown by the documentary evidence and the testimony of Westinghouse's manager of manufacturing services, the original written proposal for the sale of the machine by defendant to Westinghouse called for a standard control system utilizing two constant-dwell type buttons located in the front of the upper part of the machine. This two button control system was also the machine's principal safety feature in that it required the operator to utilize both hands while operating the press. As a result, the operator's hands were shielded from contact with the descending ram. The two button switch system could be utilized either for continuous run or for manual operation simply by turning a key to the indicated setting on the side of the machine. The setting dial on the side of the machine also included positions for foot switch operation, either continuous run or manual. A foot operated switch, however, was an extra or optional feature.

Westinghouse preferred the foot switch because under its plan for using the machine in manual operation, the operator's hands would be engaged in handling the rubber parts. Following conversations with Westinghouse officials, Minster submitted a supplemental proposal quoting a price of $60.00 for the optional foot switch.

The foot switch acted on the principle of an electric light switch—simply depressing it caused the ram to descend. It was unlike the two button control in that when it was used there was nothing on the machine, as sold, to prevent the hands of the operator from entering the point of operation. As shown by Minster's service manual, the machine could be utilized with both the two buttons and the foot switch installed, but only one activating device could be used at one time. As noted, this depended on the setting of the control key in the desired position.

Westinghouse issued a purchase order for the machine described in the proposal of Minster and another purchase order for the foot switch in the supplemental proposal. It was undisputed that when the machine arrived, Westinghouse personnel removed the two button activating system and installed the foot control mechanism in its place. Since the removal of the hand control system eliminated the principal safety feature on the machine as sold, Westinghouse's personnel also designed and installed an adjustable plastic guard in order to obstruct entry into the area in which the ram descended. However, this new device, which was on the machine at the time of the accident, only partially blocked entry into the point of operation.

Westinghouse, according to the testimony of its officer, had no specialized expertise in safety design and customarily relied heavily on the manufacturer for guidance in this area. In the instant case, however, Minster failed to provide any proposals concerning an appropriate safety guard for operation of the machine by foot switch.

Six years after the sale to Westinghouse by defendant, while plaintiff was adjusting a part by hand within the point of operation, the ram was accidentally activated by the foot pedal. It fell and injured plaintiff. Plaintiff then brought this action against defendant alleging ordinary negligence and strict liability in tort under § 402A of the Restatement of Torts (Second). Westinghouse was made a third party defendant.

Following the completion of plaintiff's case, the district court granted a directed verdict on the ground that there was no proof that the press was in a defective condition when delivered and that the negligence of Westinghouse in modifying the press was the proximate cause of the employee's accident and attendant injury. This appeal followed.

The parties both agree that Pennsylvania law controls. Pennsylvania has adopted § 402A of the Restatement of Torts (Second), *Webb v. Zern*, 422 Pa. 424, 220 A.2d 853 (1966), which provides in pertinent part:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

\* \* \* \* \* \*

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold. · · ·"

We turn first to the issues posed in the light of § 402A.

■ Should the district court have permitted the jury to decide whether the press was sold in a defective condition within the meaning of § 402A? Plaintiff's expert witnesses testified that the press was defective when sold because it did not conform to proper safety design criteria in that "it was possible for the operator to get his or her hands into the point of operation area and have an accident" when the press was being operated by foot. In addition, the evidence suggests the possibility that defendant could have taken steps to meet the safety requirements for foot operation. Defendant argues that at the time of sale the machine was not defective because it was equipped with a two button safety control system which complied with the high standards of the trade.

Fundamentally, the resolution of this case turns on the formulation of the issue. Defendant insists that the issue is whether the two button safety control system was defective within the intendment of § 402A. Since plaintiff does not challenge the safety sufficiency of that system, defendant says we must affirm the district court. Plaintiff, on the other hand, contends that the issue is whether the alternative foot control system, when delivered was defective under § 402A. Defendant seems to concede that if plaintiff's formulation of the issue is correct, the safety issue was for the jury in the absence of some other defense. We turn to the facts.

Although the press was designed with a hand control safety feature, the adequacy

of which is not challenged, it was also designed to permit operation by use of a foot control. Moreover, a device to permit such operation was a part of the original purchase order. Nevertheless, Minster provided no comparable safety device to prevent the operator's hands from becoming entangled in the operation area when the machine was operated by the foot switch. Given the testimony of plaintiff's experts, we think the issue of a defect in the press at the delivery date was for the jury, other defenses apart, unless, as defendant argues, Westinghouse's conversion to a foot control system came within the "substantial change" limitation of § 402A(1)(b).

We think a jury could reasonably find that defendant had notice at the time of the sale date that Westinghouse might operate the machine by foot. This is underscored by the contemporaneous purchase of the foot pedal for such optional operation. It could further find that defendant was then aware of the changes required to so operate it. Under such circumstances we think it was for the jury to decide whether the changes, substantial or not, were even of the type contemplated by § 402A(1)(b). This conclusion does not run counter to the policy behind the limitation in § 402A that a subsequent substantial pertinent change relieves the manufacturer of liability. That limitation was designed to protect the maker from liability for uses not reasonably contemplated and for which he could not therefore take safety measures.[1]

■ We next must consider whether the assumed defect in the press was the proximate cause of plaintiff's injuries. Defendant says that Westinghouse's modification of the press so as to render the foot pedal operative, plus the installation of the inadequate plastic guard, broke the chain of causation and itself became a superseding cause. However, the evidence indicated that the defendant designed the press for optional foot operation. In addition, the

evidence was sufficient to permit the jury to find that the defendant had notice that the machine might be used in this fashion. Under these circumstances, we believe that the jury could also find that the so-called modification was within the contemplation of the manufacturer at the sale date. Thus, we do not believe that it can be said as a matter of law that the changes required to render the foot pedal operative constituted a superseding cause.

■ Nor do we believe that Westinghouse's installation of an inadequate plastic guard relieves Minster of liability in the event the press was in fact defective when sold. We do not read anything said in *Schreffler v. Birdsboro Corp.,* 490 F.2d 1148 (3d Cir. 1974) to be at variance with this conclusion.

We therefore conclude that on this record the defect issue under § 402A was for the jury. We further conclude that there is nothing on this record to establish, as a matter of law, a superseding cause which would prevent the jury from finding that the original alleged defect was the proximate cause of the plaintiff's injuries.

Plaintiff next argues that the district court committed error in directing a verdict for defendant on plaintiff's negligence claim. Apparently, this decision was based on the court's belief that Westinghouse's modification of the press constituted a superseding cause and that as a result, the defendant's actions were not the proximate cause of the injuries sustained. In view of our determination that Westinghouse's actions were not, as a matter of law, a superseding case, we conclude that it was also error to enter a directed verdict on that theory on the negligence claim.

Defendant contends that this court should hold that plaintiff voluntarily assumed a known risk and we should affirm on that ground. The district court did not

1. The fact that the jury could find the change effected by Westinghouse to be within the reasonable contemplation of the defendant at the time of sale distinguishes this case from our recent decision in *Hanlon v. Cyril Bath Co.*

(3d Cir., Dec. 9, 1975, No. 75–1334), in which we held, as a matter of law, that the purchaser's alteration of the machinery involved constituted a substantial change within the meaning of § 402A(1)(b).

rule on this defense, and we therefore decline to resolve the issue at the appellate level in the first instance.

The order of the district court will be reversed.