**Estol PIKE, Plaintiff-Appellant,**

v.

**BENCHMASTER MANUFACTURING COMPANY, Defendant-Appellee.**

No. 80–5473.

United States Court of Appeals, Sixth Circuit.

Argued March 1, 1982.

Decided Dec. 17, 1982.

Rehearing Denied Jan. 31, 1983.

---

Charles A. Taylor, Hughes, Taylor & Elam, Lexington, Ky., for plaintiff-appellant.

W.R. Patterson, Jr., Landrum, Patterson & Dickey, Lexington, Ky., for defendant-appellee.

Before EDWARDS, Chief Circuit Judge, KENNEDY, Circuit Judge, and MARKEY,* Chief Circuit Judge.

GEORGE CLIFTON EDWARDS, Jr., Chief Judge.

This case involves an appeal from a District Judge's grant of appellee Benchmaster's motion for judgment non obstante veredicto. The judgment set aside a products liability award of $93,800 entered in favor of the plaintiff after a full jury trial.

It is undisputed that plaintiff Estol Pike lost portions of four fingers while operating a punch press for his employer. The press had been manufactured by defendant Benchmaster in August 1966. It consisted of a ram which was activated by a foot pedal by the operator. The press which delivered 10,000 pounds of pressure at the point of contact was sold by Benchmaster without any safety devices which would insure that the operator's hand would be clear of the die when the ram descended. Defendant did offer a two-handed safety device ("palm buttons") which would have required both of the operator's hands to be out of danger in order for the press to operate. It did so, however, as an option and neither the original nor subsequent purchasers of this press ordered the option. The press was also sold without any shields around the point of operation designed to protect the operator's hands.

When the press was eventually purchased by Pike's employer, it had been altered in one respect (argued to be substantial) in that the foot pedal had been lowered to a position nearer the floor. Although the record is not completely clear on this score, it seems that the original position of the foot

* Honorable Howard T. Markey, Chief Judge, U.S. Court of Appeals for the Federal Circuit, sitting by designation.

pedal may have been as much as six to eight inches above the floor and the changed location of the foot pedal may have been only one to two inches above the floor.

Under the court's instruction, the jury made specific findings. It found (1) that the press, as originally manufactured, was unreasonably dangerous; (2) that this condition was a substantial factor in causing plaintiff's injury; (3) that no subsequent change in the press was a substantial factor in causing the injury, and (4) that plaintiff had not been contributorily negligent.

The jury awarded $93,800 damages and defendant filed a motion for judgment notwithstanding the verdict.

The judgment n.o.v. was granted by the District Judge. He held that the lowering of the floor pedal meant that the press had not reached the plaintiff without a substantial change in the condition in which it was sold. He quoted RESTATEMENT (SECOND) OF TORTS, § 402A (1965), which provided in pertinent part:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

. . . . .

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

The District Judge thus accepted the defendant's evidence which tended to show that the lowering of the foot pedal was a substantial change and was the proximate cause of plaintiff's injury. In this diversity action, he cited the leading Kentucky case on products liability, *Dealers Transport Co. v. Battery Distributing Co.,* 402 S.W.2d 441, 446–47 (Ky.1965), for Kentucky's adoption of RESTATEMENT (SECOND) OF TORTS § 402A (1965). *Accord Greenman v. Yuba Power Products, Inc.,* 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897 (1963); *Goldberg v. Kollsman Instrument Corp.,* 12 N.Y.2d 432, 240 N.Y.S.2d 592, 191 N.E.2d 81 (1963); *Hen-*

*ningsen v. Bloomfield Motors, Inc.,* 32 N.J. 358, 161 A.2d 69 (1960).

This Circuit has established a stringent standard for the granting of judgments n.o.v. In *National Polymer Products v. Borg-Warner Corp.,* 660 F.2d 171, 177–78 (6th Cir.1981), we said:

In *Reeves v. Power Tools, Inc.,* 474 F.2d 375, 380 (6th Cir.1973), we stated the standard applicable to a judgment notwithstanding the verdict:

Judgment notwithstanding the verdict is not proper unless the evidence is such that there can be but one reasonable conclusion as to the proper verdict. It should not be granted if there is a conflict in the evidence, and credibility of evidence is not to be considered in passing on a motion for judgment. *Greer v. United States,* 408 F.2d 631 (6th Cir.1969); Moore's Federal Practice, Par. 50.07(2) (Second Edition).

Thus, if there is sufficient evidence to raise a question of fact for the jury, JNOV is improper. In determining whether the evidence is sufficient, the trial court may neither weigh the evidence, pass on the credibility of witnesses nor substitute its judgment for that of the jury. In deciding the motion, the trial court must view the evidence in a light most favorable to the party against whom the motion is made, drawing from that evidence all reasonable inferences in its favor. *Morelock v. NCR Corp.,* 586 F.2d 1096, 1104–05 (6th Cir.1978), *cert. denied,* 441 U.S. 906, 99 S.Ct. 1995, 60 L.Ed.2d 375 (1979); *Gillham v. Admiral Corp.,* 523 F.2d 102, 109 (6th Cir.1975), *cert. denied,* 424 U.S. 913, 96 S.Ct. 1113, 47 L.Ed.2d 318 (1976). When reviewing the trial court's decision, an appellate court is bound by the same standard. *See O'Neill v. Kiledjian,* 511 F.2d 511, 513 (6th Cir.1975).

Further, we observe that in *Dealers Transport Co. v. Battery Distributing Co., supra,* the Court of Appeals of Kentucky (then Kentucky's highest court) adopted the American Law Institute's "strict liability" rules in relation to products liability:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

    (a) the seller is engaged in the business of selling such a product, and

    (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

    (a) the seller has exercised all possible care in the preparation and sale of his product, and

    (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

RESTATEMENT (SECOND) OF TORTS, § 402A (1965).

We review the key issues of this case with these standards in mind. The issues in this appeal are:

  I.  Whether plaintiff introduced sufficient evidence to raise a question of fact for the jury as to whether the press was in a "defective condition unreasonably dangerous to the user" when defendant sold it.

  II.  Whether plaintiff introduced sufficient evidence to raise a question of fact for the jury as to whether the press reached plaintiff "without substantial change in the condition in which it (was) sold."

As we have indicated above, the jury specifically answered both of these questions in favor of the plaintiff. It is, however, our appellate responsibility to determine from the record whether the District Judge was correct in holding that there was no evidence or insufficient evidence to support the jury verdict. We now reverse and reinstate the jury award. Our decision is based on our inspection of the trial record and the trial exhibits of pictures of the press and a description of its operation from the testimony of plaintiff's expert witness.

This witness testified that the change in location of the foot pedal, as shown in the record, would not have substantially altered the characteristics of this machine which presented hazards to its operator.

This machine was sold without "palm buttons" which would have required both of the operator's hands to be away from the point of operation before the ram could descend. At the time, as trial evidence showed, this safety feature was well known in the technology of the industry. Indeed, as indicated above, Benchmaster offered such a feature, but only as an option.

Benchmaster argues that lowering the foot pedal was a substantial change which should not have been submitted to the jury, for although an operator may inadvertently apply pressure to a foot pedal one or two inches off the floor, the operator is not likely to do so if the foot pedal is six to eight inches off the floor. Benchmaster, however, overlooks the evidence of the expert witness that whether the pedal was two inches, six inches, or eight inches off the floor is immaterial since an operator commonly rests his or her foot on the crossbar to which the pedal is attached and merely moves the foot slightly to apply pressure, rather than lifting the foot from the floor for each operation. Thus, the operator might accidentally activate the press with the foot pedal in either position. At the least the jury on this record was entitled to reach that conclusion.

What we have said above is supported in this record by the testimony of plaintiff's expert witness on cross-examination:

    A very simple question, Mr. Eaton.

    Assuming that the activating pedal was located six to eight inches above floor level, and assuming further that Mr. Pike testified that his feet were on the floor, I'm simply asking you—if his feet were on the floor, they're not going to strike the pedal which is six to eight inches above the floor, are they?

    *    *    *    *    *    *

    A. In the strict form of the question, the answer, of course, is no. What we

really seem to be concerned with is where the operator rests his feet, whether they are resting on the floor, and with the design of that cross bar mounting that particular pedal, it is possible for the operator to rest his feet, particularly, if he were seated, or standing either one, on the cross bar. So, I'm not—I don't see, personally, that the actual vertical position of the pedal has a lot to do with the safety of the press.

On redirect, this matter was pursued again:

Q. Now, you did mention something on cross-examination about the tendency of an operator to rest his foot on the bar. Would you explain that to the jury, please?

A. Well, it's just—if you're working any machine like that, there is a tendency for an operator to rest his foot—perhaps not all the time, but some of the time, on a bar which is accessible near the floor level.

Eaton's testimony, together with the pictures of the press in the record, was adequate evidence to make Issue II an issue for the jury.

The closest cases to our fact situation appear to be two cases from the United States Court of Appeals for the Third Circuit. Plaintiff relies upon *Capasso v. Minster Machine Co.*, 532 F.2d 952 (3d Cir.1976). Defendant, however, argues that a preceding case *Hanlon v. Cyril Bath Co.*, 541 F.2d 343 (3d Cir.1975) should result in affirmance of the District Judge's judgment. In *Capasso,* the plaintiff was injured by a power press. The press had been built with a two-hand trip device and was designed to accommodate an optional small electrical foot switch that could be used on the floor as the activating device. The purchaser ordered the foot switch option and removed the hand control system. The case was brought under the strict liability theory of

§ 402A of the RESTATEMENT (SECOND) OF TORTS (Pennsylvania law), and the trial court directed a verdict for the defendant manufacturer, finding (1) that the press was not defective when delivered, and (2) that the purchaser's modification of the press was the proximate cause of the injury. The Third Circuit reversed, holding that both issues were for the jury to decide. As to the second issue, the court said:

We think a jury could reasonably find that defendant had notice at the time of the sale date that Westinghouse might operate the machine by foot. This is underscored by the contemporaneous purchase of the foot pedal for such optional operation. It could further find that defendant was then aware of the changes required to so operate it. Under such circumstances we think it was for the jury to decide whether the changes, substantial or not, were even of the type contemplated by § 402A(1)(b). This conclusion does not run counter to the policy behind the limitation in § 402A that a subsequent substantial pertinent change relieves the manufacturer of liability. That limitation was designed to protect the maker from liability for uses not reasonably contemplated and for which he could not therefore take safety measures.[1]

532 F.2d at 955.

■ The Benchmaster press was designed to operate by foot pedal. Benchmaster had to "contemplate" that a user would operate it without a two-handed switch. Benchmaster also furnished the press to the purchaser without any safety feature which would prevent, or even tend to prevent, the operator's hands being under the ram at the instant of its 10,000 pound stroke.

We consider the facts in this record to be somewhat stronger support for the jury award than were the facts in *Capasso.*

Reversed and remanded for entry of judgment on the jury verdict.

---

1. The fact that the jury could find the change effected by Westinghouse to be within the reasonable contemplation of the defendant at the time of sale distinguishes this case from our recent decision in *Hanlon v. Cyril Bath Co.* [541

F.2d 343] (3d Cir., 1975), in which we held, as a matter of law, that the purchaser's alteration of the machinery involved constituted a substantial change within the meaning of § 402A(1)(b).