**Robert MERKEL, Jacob M. Hughes, Michael Cain, Plaintiffs,**

v.

**SCOVILL, INC., Defendant.**

**Nos. C-1-82-149, C-1-82-150 and C-1-82-151.**

United States District Court, S.D. Ohio, W.D.

Nov. 2, 1983.

---

James B. Helmer, Jr., Cincinnati, Ohio, for plaintiffs.

Charles Weiner, Cincinnati, Ohio, for defendant; Stanford G. Wilson and Robert Thompson, Atlanta, Ga., of counsel.

## OPINION AND ORDER

SPIEGEL, District Judge:

This matter is before the Court on defendant's motion for a judgment notwithstanding the verdict or in the alternative for a new trial (doc. 95), plaintiffs' memorandum in opposition (doc. 109), and the defendant's reply (doc. 113). For reasons to be discussed, the Court finds as follows:

(1) With respect to plaintiff Cain, the motion is denied.

(2) With respect to plaintiff Merkel, the motion is denied insofar as it pertains to Merkel's federal claim. However, defendant's motion is granted insofar as it pertains to Merkel's state claim. The Court finds that there is no evidence from which the jury could properly find that the defendant Scovill, Inc., discharged Merkel because he refused to commit perjury or falsification. Accordingly, judgment notwithstanding the verdict shall be entered for defendant and against plaintiff on Merkel's state claim for wrongful discharge.

(3) With respect to plaintiff Hughes, the motion is denied insofar as it applies to his federal claim. However, with respect to the issue of compensatory damages, the motion for a new trial is denied conditional upon plaintiff Hughes' accepting a remittitur of $125,000 on the jury award of compensatory damages on his state claim. If Hughes does not consent to the remittitur, the Court shall grant a new trial limited to the issue of compensatory damages under state law.

Still pending is plaintiffs' application for attorney's fees. That motion is ripe and shall be decided expeditiously, but its pendency does not affect the finality of this Order. *Smillie v. Park Chemical Co.*, 710 F.2d 271 (6th Cir., 1983).

## FACTUAL BACKGROUND

These consolidated cases were brought pursuant to the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 *et seq.*, and state law. They arose out of events at defendant Scovill, Inc.'s Nutone plant December 18, 1980. Plaintiffs Cain and Hughes presented Earlie Howard, a Scovill guard, with an authorization pass which permitted them to remove scrap lumber from Scovill's property. The pass, obtained by Merkel on behalf of Cain, had been signed by Cain's superior. Although he allowed the two men to remove the box containing the scrap wood from the lift truck on which they were carrying it to Cain's truck, the guard was suspicious. Believing there was something in the box other than scrap wood, Howard notified his supervisor who also examined the box and then notified Paul Schlesinger, Assistant Director of Industrial Relations, of his suspicion that two employees were attempting to remove company property on a scrap wood pass. Schlesinger called his supervisor, John Henson, Director of Industrial Relations, who instructed Schlesinger to determine whether the box in fact contained company property and if so to suspend Cain and Hughes pending an investigation.

Cain and Hughes were detained at the guardhouse until Schlesinger arrived. In the presence of Schlesinger and Howard, the two men removed the wood from the box, revealing four boxes similar to those in which Scovill packed its finished goods. Cain and Hughes were subsequently questioned about these events by Schlesinger and Henson and ultimately discharged on December 23, 1980 for removing company property without authorization.

Plaintiff Merkel, who was thirty at the time, was not questioned about the events resulting in the discharge of Cain and Hughes. Approximately nine months later, Scovill received a letter from the Ohio Civil Rights Commission (OCRC) regarding the OCRC's investigation of a charge of age discrimination filed by Cain. The OCRC letter requested defendant to obtain an affidavit from Merkel.

The evidence shows that Henson and Schlesinger met with Merkel on October 7, 1981. Because he believed Merkel's statements to be inconsistent, Henson asked Merkel to submit to a polygraph examination. Merkel agreed, but on October 16, told Schlesinger he would not take such an examination. On October 22, 1981 Schlesinger met with Merkel again and showed him the OCRC letter; Margaret Poole, a company secretary, was also present. Merkel agreed to give a statement responding to the OCRC's questions; Poole recorded his answers in shorthand. The following day Merkel was given the affidavit which Poole had typed from her notes; he was permitted to take the statement home for the weekend. When he returned to work on October 27, he told Schlesinger he would not sign the affidavit because the answers were wrong. Schlesinger warned Merkel that he could be discharged if he refused to sign. When Merkel persisted in refusing to sign the affidavit, Schlesinger told him that he was discharged for giving inconsistent statements and refusing to cooperate in the OCRC investigation.

These cases were tried to a jury. Hughes and Cain asserted that age had been a determining factor in Scovill's decision to discharge them in violation of the ADEA. Merkel claimed that he had been discharged because of his participation in Cain's age discrimination claim filed with the OCRC, also in violation of the ADEA. All three plaintiffs contended that defendant had acted willfully in discharging them. The jury found that all three discharges violated the ADEA and were willful.

Plaintiff Hughes also asserted that his discharge violated Ohio Revised Code § 4101.17 which prohibits discrimination based upon age. His claim for punitive damages was struck by the Court upon defendant's motion for a directed verdict following the close of plaintiffs' case. The jury found for plaintiff Hughes on his state claim and awarded him compensatory damages in the amount of $250,000.

Plaintiff Merkel asserted a common law cause of action on the ground that he had been wrongfully discharged for refusing to commit perjury and falsification. On defendant's motion for a directed verdict, the Court dismissed Merkel's claim for punitive damages prior to the jury instruction conference. The jury found for Merkel on his state claim and awarded him compensatory damages in the amount of $150,000.

By agreement of the parties, the Court entered the judgments on the basis of the jury's answers to special interrogations. Defendant's motion followed.

## JUDGMENT NOTWITHSTANDING THE VERDICT

The principles governing the granting of a motion for a judgment notwithstanding the verdict are well established. The test is whether there is evidence upon which a jury could properly find a verdict for the party opposing the motion. *Hill v. Spiegel,* 708 F.2d 233, 237 (6th Cir.1983); *Pike v. Benchmaster Manufacturing Co.,* 696 F.2d 38, 40 (6th Cir.1982). The Court may not weigh the evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury. 9 C. Wright and A. Miller, *Federal Practice & Procedure: Civil* § 2254 and cases cited therein. A motion for a judgment notwithstanding

the verdict "may be granted only if, viewing the admissible evidence most favorable to the party opposing the motion, a reasonable trier of fact could draw only one conclusion." *Hill v. Spiegel,* 708 F.2d at 237, citing *Continental Ore Co. v. Union Carbide & Carbon Corp.,* 370 U.S. 690, 82 S.Ct. 1404, 8 L.Ed.2d 777 (1962).

## I. *Federal Claims*

Defendant first maintains that the Court should have granted defendant's motion for a directed verdict on the ADEA claims of plaintiffs Cain and Hughes. It argues that the evidence was insufficient to permit a reasonable person to conclude that age was a determining factor in the decisions to discharge and that Scovill articulated a legitimate nondiscriminatory business reason for the discharges. More particularly, defendant argues that Cain and Hughes failed to present any evidence that defendant's articulated reason—that plaintiffs were discharged for the unauthorized removal of company property—was pretextual.

■ In an age discrimination claim under the ADEA, the plaintiff bears the burden of demonstrating by a preponderance of the evidence that he was within the protected age group, discharged, and that age was a determining factor in his discharge. *Blackwell v. Sun Electric,* 696 F.2d 1176, 1180 (6th Cir.1983). A plaintiff is entitled to liquidated damages under the ADEA if he proves that defendant acted willfully, *i.e.,* that the defendant deliberately, intentionally, and knowingly discharged him because of his age. *Blackwell v. Sun Electric,* 696 F.2d at 1183–84.

It was undisputed that Cain and Hughes were able to perform their work, were within the protected age category and were discharged. The only questions for the jury therefore with respect to Cain and Hughes' ADEA claims were whether age was a determining factor in the decision to discharge them and whether defendant acted willfully.

■ We have carefully reviewed the evidence and conclude that Cain and Hughes presented evidence from which a jury could reasonably find that age was a determining factor and that the discharges were willful. In particular, we note that plaintiffs showed that defendant, at a minimum, should have been aware that Merkel obtained the scrap wood pass for Cain, but that defendant did not even question the much younger Merkel until some months after discharging Hughes and Cain and only after the OCRC began investigating Cain's age discrimination charge. In addition, plaintiff presented evidence that there was no written policy with regard to the unauthorized removal of company property and that younger employees who appeared to have removed property without authorization were treated differently than Hughes and Cain. This evidence was sufficient to allow a reasonable jury to conclude that age was a determining factor and that defendant acted willfully. Accordingly, we find that it would be inappropriate to order a judgment notwithstanding the verdict on federal claims of plaintiffs Hughes and Cain.

■ With respect to Merkel's federal claim, we similarly find that Merkel presented evidence from which a reasonable jury could find that he was discharged because of his participation, or lack thereof, in an investigation of an age discrimination claim, and that defendant acted willfully. Merkel's federal claim is based upon 29 U.S.C. § 623(d) which prohibits an employer from discriminating against an employee who has "made a charge, testified, assisted or participated in any manner in an investigation proceeding or litigation under [the ADEA]". Merkel thus bore the burden of proving that retaliation for his participation in the investigation of plaintiff Cain's age discrimination claim was a determining factor in Scovill's decision to discharge Merkel.

The termination form completed by Paul Schlesinger, who discharged Merkel, states that "Mr. Merkel refused to cooperate in a state investigation and gave conflicting

statements regarding his activities associated with that investigation to the company" (Joint Exhibit III). The testimony at trial clearly established that the "state investigation" was OCRC's investigation of Cain's age discrimination charge. A refusal to participate in an OCRC investigation is activity protected by the ADEA. *Smith v. Columbus Metropolitan Housing Authority*, 443 F.Supp. 61 (S.D.Ohio 1977).

It is true, as defendant argues, that defendant presented the jury with evidence that Merkel gave Scovill inconsistent statements from which the jury might have inferred that Merkel was terminated for a legitimate nondiscriminatory reason. Nonetheless, it is not this Court's duty to weigh the evidence and the credibility of the witnesses upon a motion for a judgment notwithstanding the verdict; that is the role of the jury. Schlesinger's statement as to the cause for Merkel's termination is evidence from which a reasonable jury might well have inferred that Merkel was terminated in retaliation for his participation (in the form of nonparticipation) in the OCRC's investigation of an age discrimination charge. That evidence is also sufficient to support the jury's finding that Scovill acted willfully in discharging Merkel.

Accordingly, we conclude that it would be inappropriate to grant a judgment notwithstanding the verdict on Merkel's federal claim based upon retaliatory discharge.

## II. *Plaintiff Hughes' State Claim for Age Discrimination Under O.R.C. § 4101.17*

Scovill argues that Hughes cannot recover on his claim for relief under § 4101.17 without a finding that age was a determining factor in Scovill's decision to discharge him. More particularly, defendant challenges a jury instruction which stated: "[u]nder Ohio law, it is unlawful for an employer to discharge an employee who is between the ages of 40 and 70 years old without just cause." "Just cause" was defined to mean "[t]hat if an impartial person examines all the facts and circumstanc-

es of the case, he would conclude that the discharge was merited."

The pertinent language of O.R.C. § 4101.17 is as follows:

(A) No employer shall ... discharge without just cause any employee between the ages of forty and seventy who is physically able to perform the duties and otherwise meets the established requirements of the job and laws pertaining to the relationship between employer and employee.

(B) Any person between the ages of forty and seventy ... discharged without just cause by an employer in violation of division (A) of this section may institute a civil action

.    .     .     .    .

Thus, the first sentence of the jury instruction was drawn directly from the statutory language. Defendant, however, refers us to *Barker v. Scovill, Inc.*, 6 Ohio St.3d 146, 451 N.E.2d 807 (1983) handed down following the trial of the instant case, in which the Ohio Supreme Court addressed the proof necessary to establish a violation of O.R.C. § 4101.17. Under *Barker*, a plaintiff is required to make out a *prima facie* case by showing:

(1) that he was a member of the statutorily protected class,

(2) that he was discharged,

(3) that he was qualified for the position, and

(4) that he was replaced by or his discharge permitted the retention of a person not in the protected class.

The defendant then must articulate a legitimate nondiscriminatory reason for plaintiff's discharge. If he does so, the plaintiff must go forward with evidence to demonstrate that the articulated reason for the discharge is pretextual. 6 Ohio St.3d at 147–48, 451 N.E.2d 807.

[5] Obviously, *Barker* would require a different set of jury instructions were this case to be tried now. However, as we read *Barker*, the ultimate question, as in an ADEA case, is whether age was a determining factor in defendant's decision to

discharge the plaintiff. The jury here found in connection with Hughes' ADEA claim that Hughes' age was a determining factor in Scovill's decision to discharge him.[1] Accordingly, we conclude that Hughes satisfied the *Barker* test and thus there is no basis for judgment notwithstanding the verdict in favor of Scovill.

■ With respect to the jury award of compensatory damages to Hughes, defendant argues that O.R.C. § 4101.17 does not, as a matter of law, provide for compensatory damages. This issue was raised early on in this case and in our Opinion and Order of January 27, 1983 (doc. 35), we concluded that such damages are available. Defendant urges that principles of statutory construction require that we now find that compensatory damages are not available under O.R.C. § 4101.17. It points out that at least one federal district court has so ruled since our earlier ruling. *Schlosser v. Firestone Tire & Rubber Co.*, C 82–3448A (N.D.Ohio, 1983). We have considered defendant's well-reasoned argument carefully. Nevertheless, we continue to find that compensatory damages are available under O.R.C. § 4101.17. *See Venezia v. Scovill, Inc.*, C–1–83–0878 (S.D. Ohio, September 12, 1983).

■ Defendant also asserts that Hughes failed to provide evidence from which a jury could reasonably find that Scovill's actions in discharging him resulted in loss of reputation, embarrassment, humiliation, and/or loss of self-esteem. We disagree. The uncontradicted testimony of both Hughes and his wife was that he had trouble sleeping, was too embarrassed to go to church, and had withdrawn from his family. Accordingly, we decline to grant a

judgment notwithstanding the verdict on the issue of compensatory damages.

## II. *Plaintiff Merkel's State Law Claim for Wrongful Discharge*

Defendant argues first that the Court should reconsider its Opinion and Order of March 11, 1983 (doc. 45) in which we concluded that the Ohio Supreme Court would recognize an exception to the employment at will doctrine for a discharge based upon an employee's refusal to commit perjury. Defendant refers us to three cases in which federal courts of appeal declined to predict that state law would develop a public policy exception to the at will doctrine. *Phillips v. Goodyear Tire & Rubber Co.*, 651 F.2d 1051 (5th Cir.1981) (Ga., Tex.); *Percival v. General Motors Corporation*, 539 F.2d 1126 (8th Cir.1976) (Mich.); *Loucks v. Star City Glass Co.*, 551 F.2d 745 (7th Cir.1977) (Ill.). Needless to say, we are not bound by the holdings in these cases. Further, we note that none of these cases disputes the duty of a federal court to predict what a state's highest court would decide if faced with a particular legal issue.[2]

■ As there were—and are—no pertinent state court decisions, we looked at those sources which we believed would help us decide this issue correctly. Defendant has presented us with no new case law or other data from this jurisdiction which persuades us that we should modify our initial holding. Accordingly, we reiterate our conclusion that the Ohio Supreme Court would find a public policy exception to the at will doctrine where a discharge is based upon an employee's refusal to commit perjury.

However, after a careful review of the evidence, we conclude that Merkel present-

---

**1.** Arguably, under *Barker,* Hughes would have had to have shown that he was replaced by a person not in the protected class. The evidence was undisputed, however, that Hughes was replaced by such an individual. Defendant argued that it tried to replace Hughes with an older worker, but was unable to do so and was ultimately forced to replace him with a younger worker because of seniority rights. However, the testimony also clearly established that Scovill has no written seniority policies. The logi-

cal conclusion is that Hughes made out a *prima facie* case as required by *Barker.*

**2.** Indeed it is well settled that a federal court is required to predict as best it can "from available sources what the Supreme Court of the state would do if presented with the same issues" *Orfield v. International Harvester Company,* 535 F.2d 959, 965 (6th Cir.1976).

ed no evidence from which a jury could reasonably conclude that Scovill discharged him because he refused to commit perjury or falsification. We do not hold that a plaintiff asserting that he was wrongfully discharged for refusing to commit perjury or falsification must prove all the elements of suborning perjury. However, because the recognition of an exception to the at will doctrine is in derogation of the common law, such an exception must be strictly construed. Therefore, a plaintiff who asserts such a cause of action must prove by a preponderance of the evidence that defendant knew that it was requesting the plaintiff to commit perjury or falsification in violation of O.R.C. § 2921.11 or § 2921.-13.

Perjury and falsification are statutory offenses in Ohio. Perjury is defined in O.R.C. § 2921.11 which provides:

No person, in any official proceeding, shall knowingly make a false statement under oath or affirmation, or knowingly swear or affirm the truth of a false statement previously made when either statement is material.

Perjury is a felony of the third degree. Falsification is described in O.R.C. § 2921.-13, which provides:

No person shall knowingly make a false statement, or knowingly swear or affirm the truth of a false statement previously made, when any of the following apply: (6) ... the statement is sworn or affirmed before a notary public or other person empowered to administer oath.

Falsification, a misdemeanor of the first degree, covers much of the conduct formally designated as perjury and may constitute a lesser included offense. Committee Comment to House Bill 511. For our purposes we can consider the two offenses as one. Based upon the statutory definitions just quoted, we conclude that one cannot suborn perjury or falsification unless one knows that the substance of the statement he seeks to have sworn is false.

There is relatively little Ohio law on the subornation of perjury, but the accepted definition appears to be that "subornation is procuring a person to commit perjury which he actually does in consequence of such procurement." 28 O.Jur.3d § 2143, citing *Walker v. State*, 18 OCC NS 1, 36 OCC 627. Other jurisdictions recognize that even if the suborner is unsuccessful, the attempt at subornation constitutes contempt of court. "Perjury or false swearing as contempt," 89 A.L.R.2d 1258.

The evidence clearly establishes that under no circumstances was Scovill guilty of suborning perjury under the law of Ohio as Merkel refused to sign the affidavit upon which he bases his cause of action. However, in our view, the attempt to suborn perjury or falsification also gives rise to a cause of action for wrongful discharge because the attempt, like the criminal act itself, is an offense against justice. Our inquiry therefore, must focus on whether there was evidence from which a reasonable juror could find that Scovill attempted to suborn perjury.

In a letter dated September 1, 1981, the Ohio Civil Rights Commission asked Scovill to supply it with certain information needed for the investigation of Michael Cain's charge of age discrimination. Joint Exhibit IV. Among the information sought was a notarized affidavit from Merkel responding to four questions posed by the OCRC. Marge Poole, a notary public and Scovill employee, testified that she was present at a meeting on October 22, 1981 with Schlesinger and Merkel, in which Schlesinger asked Merkel each of these questions and she took shorthand notes of Merkel's answers. She further testified that those notes, admitted as Joint Exhibit V, are an accurate reflection of Merkel's responses. Poole also testified that she transcribed her notes into affidavit form, and that the affidavit (Defendant's Exhibit Q), accurately reflects Merkel's answers of October 22, 1981. The affidavit reads as follows:

AFFIDAVIT OF ROBERT MERKEL

October 22, 1981

Question: Who loaded the scrap wood into the box given to Complainant (Michael Cain, Jr.)?

Answer: Mike did. Mike, Jake and Me did. I told Mike the box was out there. Me, Mike and Jake all put wood in the box.

.    .    .    .    .

Question: Again, who loaded the wood in the box?

Answer: Mike (Cain) did. Jake pressed the wood skids with his mule (towmotor) and I was only there a couple of minutes. I was the third person to load the wood in the box. When I got there the box was one half full and I only stayed a couple of minutes because I had to take the trash trailers back.[3]

Poole testified that she was present at the Schlesinger-Merkel meeting on October 27, at which Merkel refused to sign the affidavit on the basis that his answer to the first question was incorrect. According to Poole, Merkel stated that he remembered that he had not put any wood in the box. She stated that the answer she had transcribed on the affidavit was the answer he had given on October 22nd.[4]

As stated earlier, it is incumbent upon Merkel to prove that Scovill knew the statement it was asking Merkel to sign was false. Merkel failed to do so. What the evidence shows is that Scovill asked defendant to sign a statement he himself had given. The evidence also shows that Merkel sought to change his first response only. However, examination of the final response reveals that the only reasonable interpretation of that answer is that Merkel loaded wood into the box ("I was the third person to load the wood in that box.").

In addition, a letter from Schlesinger to Scovill counsel dated October 21, 1981 states that Merkel told Schlesinger he had not packed wood into the box. Joint Exhibit I. Also in evidence is Merkel's testimony at an unemployment compensation hearing, May 12, 1981 on Cain's claim for unemployment benefits:

"Q. (by Mr. Decker) Now was this before you loaded the box full of wood? (Mr. Merkel interrupts)

A. Yeah, you always got to have your pass before you take anything out.

Q. Or was this after you loaded the box full of wood?

A. Before.

Q. Before?

A. Yeah.

Q. So he asked you to get him a pass, then you saw this box of wood half full and filled it up? (Mr. Merkel interrupts)

A. That was before I went and got the pass. That morning, I said.

Q. So you filled the box up with wood and then he asked you to get a pass?

A. No, before that. You know, after I seen the box I told him. And then he said, will you go up and get me a pass, you know. Put in for a pass. So I went in and put in for a pass."

Defendant's Exhibit X at 70. Defendant reads Merkel's responses as establishing that he packed wood into the box. Although the testimony is ambiguous, defendant's interpretation is not patently inaccurate.

Merkel interprets the evidence as demonstrating his efforts to explain that the box was already filled and that Cain put only a few pieces of wood on top of the box. His conclusion, as stated to the jury, is that Scovill was trying to get him to swear that Cain had been the individual who had originally loaded the box with wood.

There is no reason, nor is it our role, to doubt the sincerity of Merkel's beliefs as to what he thought Scovill was trying to do. However, reading the affidavit as favor-

---

**3.** The middle three questions are not at issue here. Although what appears as the fifth question in the affidavit was not included in the OCRC's list of questions, it is obviously no more than a restatement of the OCRC's first question.

**4.** On cross-examination, Ms. Poole stated that she also took shorthand notes of the October 27th meeting. Those notes are not in evidence. She admitted that she was unable to get everything down verbatim because the conversation of October 27th proceeded fairly rapidly, testimony relied upon by plaintiff to suggest that the notes of October 22nd may have been inaccurate.

ably to Merkel as possible, and assuming that the answer to the first question is false, there is no way we can conclude Scovill knew it was false. Indeed, based on Merkel's answers in earlier meetings, his change of mind with respect to the polygraph examination, and testimony at the unemployment compensation hearing, we do not see how Scovill could know whether the answer was false or not.

■ There is evidence from which we might reasonably conclude that Scovill was harrassing Merkel. See, *e.g.*, Schlesinger's letter of October 21, 1981 ("Both Mr. Henson and I *again grilled* Mr. Merkel", Joint Exhibit I (emphasis added)). There is evidence from which we might reasonably conclude—as the jury did—that defendant discharged Merkel because of his lack of cooperation with the investigation. But there simply is no evidence from which we might reasonably conclude that Scovill knew the statement it asked Merkel to sign was false. In other words, although there is evidence from which we might find that defendant discriminated in violation of the ADEA, there is *no* evidence from which we could reasonably conclude that Scovill's behavior sank to the level of suborning perjury or falsification. Accordingly, judgment notwithstanding the verdict is hereby entered for defendant Scovill and against plaintiff Merkel on Merkel's state law claim for wrongful discharge.[5]

### MOTION FOR A NEW TRIAL

Defendant moves in the alternative pursuant to Rule 59, Fed.R.Civ.P., for a new trial on the issues of both liability and damages on the grounds that the jury verdicts were the result of passion and prejudice. More particularly, the defendant maintains that the verdicts are contrary to law and the weight of the evidence. In addition, defendant contends that plaintiffs offered no probative evidence of their pecuniary injuries, that the jury was inflamed by the admission of inadmissible evidence and the allegedly improper comments of plaintiff's counsel in closing arguments, and that the Court's instructions to the jury were improper.

We agree with defendant that where a jury's verdict is the result of passion or prejudice, or where the jury has erred or abused its discretion, the trial court must order a new trial. *Minneapolis, St. Paul and Sault Ste. Marie Ry. Co. v. Moquin,* 283 U.S. 520, 51 S.Ct. 501, 75 L.Ed. 1243 (1931). However, Rule 61, Fed.R.Civ.P., makes it emphatically clear that ordering a new trial is inappropriate unless refusal to do so "appears to the court inconsistent with substantial justice." The overriding standard against which we must measure defendant's arguments is whether there has been a substantial miscarriage of justice.

With respect to procedural errors, Rule 61, Fed.R.Civ.P. provides that unless an error in the proceedings affects a substantial right of a party, it is harmless and cannot be the basis for ordering a new trial. *See* C. Wright & A. Miller, *Federal Practice & Procedure: Civil* §§ 2801, 2803 and cases cited therein. In addition, it is well settled that a new trial will not be granted on grounds not called to the Court's attention during trial unless the error is so fundamental that it results in gross injustice. C. Wright & A. Miller, *Federal Practice & Procedure: Civil* § 2805. Further, Rule 51, Fed.R.Civ.P., provides that no party may raise as error an instruction given to the jury unless the challenged instruction was specifically objected to before the jury retired.

As a preliminary matter, we point out that many of defendant's claims go to the

---

**5.** Having entered a judgment notwithstanding the verdict for defendant on Merkel's state claim, we need not consider defendant's argument that there is no evidence upon which the jury could reasonably base an award of compensatory damages. If we were required to decide this issue, however, we would conclude that the uncontradicted testimony of Merkel and his wife was sufficient evidence from which the jury could reasonably conclude that Merkel had suffered loss of reputation, embarrassment, humiliation, and/or loss of self-esteem as a result of his discharge by Scovill.

issue of compensatory damages under state law. As we concluded earlier that judgment notwithstanding the verdict should be entered on plaintiff Merkel's state claim for wrongful discharge, we need consider defendant's claim only in the context of plaintiff Hughes' state law claim pursuant to O.R.C. § 4101.17. We will, however, note in passing how we would rule on defendant's claims with respect to plaintiff Merkel's state law claim if we were required to do so.

Defendant first alleges that it was error to refuse to instruct in relation to Hughes' claim under O.R.C. § 4101.17 that Hughes had to prove by a preponderance of the evidence that age was a determining factor in the decision to discharge. If, in fact, our refusal to give the requested instruction was error, the error was harmless. The jury was instructed with respect to Hughes' federal claim that Hughes had to prove by a preponderance of the evidence that "his age was a determining factor in Scovill's decision to discharge [him]." As the jury found for Hughes on his federal claim, it clearly found that age was a determining factor and, accordingly, defendant was not prejudiced by our refusal to give the requested instruction.

Defendant next alleges that the admission of testimony pertaining to damages for loss of reputation, humiliation, embarrassment, and/or loss of self-esteem was error. Not only is such testimony inadmissible, according to defendant, but also such testimony was prejudicial and inflammatory. In essence, defendant argues that admission of this testimony deprived defendant of a fair trial.

We disagree. It is true that such evidence is inadmissible in an action involving claims under the ADEA only. *Hill v. Spiegel*, 708 F.2d at 236. It is also true that our Court of Appeals has held that the substantial rights of a defendant were so affected by the admission of such evidence that defendant was entitled to a new trial. *Id.* However, as *Hill* involved only federal claims, the Court did not address the relationship between an ADEA claim and testimony with respect to damages pursuant to a pendent state claim.

We recognize the danger that such testimony might be prejudicial insofar as it has a spillover effect on an ADEA claim, but we conclude that such a spillover effect can be rendered harmless. In other words, the proper approach is not to bar all pendent state claims where plaintiff also asserts a claim under the ADEA—which is what would happen if we adopted defendant's argument—but rather to look at the facts of a particular case and determine whether the admission of the challenged testimony resulted in a substantial injustice to the moving party. *See e.g., Cancellier v. Federated Department Stores*, 672 F.2d 1312, 1318–19 (9th Cir.1982), *cert. denied*, —— U.S. ——, 103 S.Ct. 131, 74 L.Ed.2d 113 (1982), in which the Ninth Circuit, holding that the ADEA does not preempt an award of tort damages on a pendent claim, approved an award of punitive damages in a case joining an ADEA claim with a pendent claim for the intentional infliction of emotional distress.[6]

Our review of the evidence leads us to conclude that there was substantial evidence—excluding the challenged testimony on loss of reputation, embarrassment, humiliation, and loss of self-esteem—from which the jury could have reasonably found

---

**6.** *Cancellier,* like our own case, involved three plaintiffs. In addition to the ADEA and pendent tort claims, the *Cancellier* plaintiffs asserted claims for breach of employment contract and breach of the implied covenant of good faith and fair dealing. The Court urged the use of special interrogatories to the jury similar to those employed in the instant case on the ground that general verdicts in a case linking an ADEA claim with a pendent claim presents special problems for the Court of Appeals. 672

F.2d at 1317. The Court also made the following observation:

> While the wisdom of allowing open-ended state claims for breach of the implied covenant to coexist with ADEA claims whose financial redress Congress has carefully limited to specific damage elements, ... is arguable, it is for Congress, not us, to decide whether state common law remedies trench too closely on the federal scheme. *Id.* at 1318 (citations omitted).

the defendant's discharge of all three plaintiffs was unlawful. See our discussion of the evidence in I, *supra.* It is not for us to speculate as to which evidence the jury looked to in reaching its conclusion. *Taken Alive v. Litzau,* 551 F.2d 196, 199 (8th Cir.1977). We find it impossible to conclude that the admission of the testimony on compensatory state damages with respect to plaintiffs Merkel's and Hughes' state claims resulted in a substantial injustice to Scovill.

Defendant's third claim concerns the instructions on compensatory damages under state law and has three facets. The first facet, that compensatory damages are not recoverable under O.R.C. § 4101.17, was addressed in II, *supra,* and need not be considered further. Second, defendant asserts that loss of reputation is not a proper element of compensatory damages without a requisite showing of the elements of defamation, citing *Hooper v. Seventh Urban, Inc.,* 70 Ohio App.2d 101, 434 N.E.2d 1367 (1980). Plaintiffs insist that defendant failed to object to the inclusion of loss of reputation in the instruction on elements of compensatory damages and is therefore barred from raising it now.

Our review of the transcript of the charging conference demonstrates that defendant did in fact object to the instruction it now challenges. Assuming, *arguendo,* that *Hooper's* statement that the appropriate remedy for injury to reputation is an action for defamation, 70 Ohio App.2d at 110, 434 N.E.2d 1367, is correct, we nevertheless conclude that the error, if any, was harmless. The instruction on compensatory damages under state law provided:

> To recover damages for loss of reputation, humiliation, embarrassment, and loss of self-esteem, plaintiff must prove by a preponderance of the evidence that

he suffered the *particular* injury and that the injury is the result of defendant Scovill's action (emphasis added).

In other words, the jury was told to focus on the evidence as to each particular element of compensatory damages. Our review of the testimony of plaintiff Hughes and his wife reveals no evidence pertinent to reputational injury. Rather, their testimony went to their own embarrassment, plaintiff's loss of self-esteem, and the emotional effects of the discharge. We find it difficult, therefore, to see how defendant was subjected to any substantial injustice under these circumstances.[7]

The third aspect of defendant's third claim of error is that humiliation, embarrassment and loss of self-esteem are compensable only if the injuries were serious, intentional, wanton and willful and/or defendant's conduct was found to be malicious or outrageous. Defendant also maintains that plaintiff Hughes failed to prove a causal connection between his discharge and his alleged compensatory damages.

We find these claims without merit, although as will be discussed subsequently, we do find the compensatory damages award of $250,000 excessive. The jury found with respect to all three plaintiffs' federal claims that Scovill acted willfully in discharging them. An employer acts willfully if he deliberately, intentionally or knowingly discharges an employee because of that employee's age or that employee's participation in an age discrimination claim. *Blackwell v. Sun Electric Corp.,* 696 F.2d at 1183–84. A finding that an employer acted willfully within the meaning of the ADEA is sufficient to support an award of damages pursuant to state law for embarrassment, humiliation and/or loss of self-esteem.

---

**7.** Similarly the testimony of plaintiff Merkel and his wife focused largely on his depression and their changed relationship following his termination by defendant rather than on any reputational injury. Although he did testify that he had been unable to find work since his discharge, evidence on which one might base a finding of reputational injury, it is not our role to speculate as to what evidence the jury relied upon in finding that plaintiff was entitled to compensatory damages, or which injuries that award was intended to compensate. Thus, if required to do so, we would find that, assuming the inclusion of loss of reputation in the instruction on the elements of compensatory damages was error, that error resulted in no substantial injustice to the defendant.

Similarly, we conclude that Hughes did establish a causal relationship between his discharge and the embarrassment, humiliation and/or loss of self-esteem he experienced. He testified that, as a result of his termination, he was too embarrassed to go to church, that his wife had withdrawn, and that she and the Hughes' children shared his own embarrassment. He further testified that he takes medications to settle his nerves and that he has trouble sleeping. His wife testified that the "discharge was like a death in the family." It was stipulated that Hughes had worked for the defendant for over 24 years.

Expert medical testimony is not essential to establishing causation where the damage claimed is embarrassment, humiliation and/or loss of self-esteem. What is required is that plaintiff "show by a preponderance of the evidence, medical or otherwise ... that a direct or causal relationship existed" *Fox v. Industrial Commission of Ohio*, 162 Ohio St. 569, 125 N.E.2d 1 (1955). Although *Fox* involves a work-related physical injury and was decided largely on the basis of earlier workers compensation cases, we believe its holding with respect to causation extends to employment discrimination claims.

Although there was testimony that Hughes had stomach problems following his discharge, that testimony was only part of the evidence relevant to Hughes' damage claims. As we construe the evidence, Hughes' damage claims are primarily related to emotional injuries. It is clear that non-expert witnesses may testify to emotions manifested by another. *Jones v. Wittenberg University*, 534 F.2d 1203, 1210–11 (6th Cir.1976). Furthermore, under Ohio law, the jury is entitled to reach conclusions of matters within their common experience. *Jones v. Wittenberg University*, 534 F.2d at 1210. Based on the evidence

before them, as well as their common experience, the jury could reasonably have concluded that, as a result of his termination by Scovill, Hughes suffered embarrassment, humiliation and/or loss of self-esteem.[8]

■ Although we conclude that the jury properly found that defendant Scovill's discharge of Hughes caused Hughes to suffer embarrassment, humiliation and/or loss of self-esteem, we find that the amount of compensatory damages awarded pursuant to his state claim, $250,000.00, excessive. A federal district court has the power to condition a denial of a motion for a new trial upon consent to a remittitur. *Smith v. John Swafford Furniture Co., Inc.*, 614 F.2d 552, 553 (6th Cir.1980). Accordingly, we order plaintiff Hughes to remit $125,000.00 of that award, or to consent to a new trial limited to the amount of compensatory damages.

A remittitur is appropriate only if the damage award is clearly not within the maximum limit of a reasonable range. *Smith v. John Swafford Furniture Co., Inc.*, 614 F.2d at 553, quoting *Manning v. ALTEC*, 488 F.2d 127 (6th Cir.1973). In making this determination, we are obliged to examine the evidence on damages. 614 F.2d at 553. *See also Grimm v. Leinart*, 705 F.2d 179 (6th Cir., 1983).

We are well aware that where damages are capable of no precise calculation, the amount of damages is left to the discretion of the finder of facts. *Drayton v. Jiffee Chemical Corporation*, 591 F.2d 352, 366 (6th Cir.1978). Nevertheless, that discretion must "be exercised reasonably and within the range of the proofs." *Id.* We have already outlined the testimony of plaintiff Hughes and his wife on the question of compensatory damages. We note that their testimony was uncontradicted. Nonetheless, we do not believe that the

---

**8.** The evidence with respect to plaintiff Merkel is similarly sufficient for the jury to have concluded that his termination by Scovill resulted in embarrassment, humiliation and/or loss of self-esteem. Merkel had worked for the defendant for over 11 years. He testified that after his discharge he became depressed and found it

hard to talk to others. In addition, he began to experience stomach problems and had difficulty sleeping. He further testified that his relationship with his wife had deteriorated. His wife corroborated his testimony as to the effect of the discharge.

evidence supports an award of $250,000.00. Of course, one cannot put a value on depression or being too embarrassed to go to church, or the effect of being fired after 24 years with one company, but on the basis of the fairly limited evidence proffered by Hughes, we find it impossible to conclude that an award of $250,000.00 is "within the maximum limit of a reasonable range."

We do, however, find that the record will support a compensatory damages award of $125,000.00. *See Grimm,* 705 F.2d at 181–182. By agreement of the parties, the amount of liquidated damages awarded pursuant to Hughes' ADEA claim is to be subtracted from the award of compensatory damages on the state claim. *See* Opinion, Order and Judgments of July 28, 1983 (doc. 91) at 21–22. Accordingly, if Hughes accepts the remittitur, the compensatory damages to be awarded pursuant to his state law claim will be reduced to $101,974.60 ($125,000.00 less the liquidated damages award under the ADEA of $23,025.40).[9]

Next, defendant asserts that the Court erred in permitting over objection the introduction by plaintiffs of defendant's net worth without a prior showing of malice. We find the claim without merit. Both Hughes and Merkel asserted claims for punitive damages in connection with their state claims. Scovill's motion for a directed verdict with respect to Hughes' claim for punitive damages at the close of plaintiff's case was granted; however, the Court denied the motion with respect to Merkel's claim for punitive damages. Because punitive damages was still a question for the jury, the Court read to the jury a stipulation of defendant's net worth. At the close of defendant's case, Scovill again moved for a directed verdict as to Merkel's claim for punitive damages and ruled prior to the jury instructions conference that the punitive damage question would not go to the jury. In other words, at the time the stipulation as to net worth was read to the jury, there was a question of punitive damages, and thus the evidence was admissible. When the Court later granted defendant's motion for a directed verdict on the issue of Merkel's punitive damages claim, defendant did not request an instruction that the jury disregard the stipulation. The jury, however, was instructed that it should not be swayed by bias or prejudice and further that a corporation is entitled to the same fair trial as an individual and is to be dealt with as an equal. Accordingly, we conclude that the admission of evidence of defendant's net worth does not constitute grounds for the granting of a new trial. Rule 51, 61, Fed.R.Civ.P.

Scovill next asserts that the jury verdicts are excessive and appear to have been given under the influence of passion and prejudice. We have implicitly addressed this contention throughout our discussion. It should be clear that our review of the evidence persuades us that Hughes (and Merkel) offered sufficient competent evidence with respect to the causation and extent of his injuries to justify an award of compensatory damages under state law. To the degree we found the award of compensatory damages excessive and not within the maximum limit of a reasonable range, we conditioned our denial of Scovill's motion for a new trial on Hughes' consent to a remittitur.

Defendant next asserts that the Court's refusal to permit the defendant to open and demonstrate the contents of defendant's Exhibits C, D, E, and F—the boxes allegedly removed from the boxes of scrap wood and the basis for Scovill's decision to dis-

---

9. For similar reasons, we would conclude, if necessary, that plaintiff Merkel should remit $75,000.00 of the compensatory damages award on his state common law claim or submit to a new trial on the issue of compensatory damages.. The testimony of Merkel and his wife was similar in both quality and quantity to that of Hughes and his wife. In both cases, the evidence clearly established that plaintiffs' family relationships had deteriorated and that both plaintiffs experienced depression and stress as a result of their discharges. As he was awarded $21,381.90 in liquidated damages on his ADEA claim, Merkel would be entitled to compensatory damages under Ohio common law of $54,618.10 had we not concluded that defendant was entitled to a judgment notwithstanding the verdict on Merkel's state law claim.

charge Cain and Hughes on the grounds that they were removing company property without authorization—was prejudicial and influenced the jury's verdict. Again, we find the claim without merit. Scovill argues that the contents of the boxes are critical to its legal obligation to articulate a legitimate business reason for the discharge of Cain and Hughes. We find the argument dissembling as the testimony clearly established that Scovill did not open the boxes prior to discharging Cain and Hughes. However, Scovill argues that it should have been permitted to show the jury the contents of the boxes because plaintiffs' counsel in opening argument stated that company officials discharged Cain and Hughes for removing company property without first ascertaining that they in fact were removing company property. In other words, according to Scovill, plaintiffs raised the issue of the contents of the boxes thereby putting in issue defendant's good faith. Plaintiffs, however, argue that the issue they raised did not go to the contents, but rather to the question of whether the boxes were produced by Scovill after the discharges in order to establish a basis for the discharges. They also point out that, even though the boxes went to the jury room, the jury did not ask whether they could open the boxes.

In light of all of the evidence and circumstances surrounding this trial, we find that the denial of Scovill's request to open the boxes, even if that denial was error, did not result in any substantial injustice to defendant. Each of the boxes was marked on the outside with the contents allegedly contained therein. Furthermore, opening the boxes would not have addressed the issue of whether Scovill produced the boxes after the fact. Again, we emphasize that we cannot speculate as to how the jury might have reached its conclusion. In any event, we cannot see how defendant was prejudiced. Accordingly, even if our ruling was error, it does not constitute grounds for a new trial.

Finally, defendant argues that statements by plaintiffs' counsel during closing argument and the Court's failure to admonish counsel or to instruct the jury to disregard these statements allowed the jury to believe it might properly consider punitive sanctions against the defendant in the guise of compensatory damages. In particular, defendant asserts that counsel's statement that the jury should "send Scovill a message that you can't treat people like the Plaintiffs were treated" was a request to punish defendant for its unfair treatment of plaintiffs rather than for any demonstrated discrimination based on age against the plaintiffs.

Again, we find the objection without merit. First, defendant did not object to the statement when made or request a curative instruction. *Rothschild v. Drake Hotel, Inc.*, 397 F.2d 419, 425 (7th Cir. 1968), citing *Crumpton v. United States*, 138 U.S. 361, 364, 11 S.Ct. 355, 356, 34 L.Ed. 958 (1891), and *United States v. Socony-Vacuum Oil Co., Inc.*, 310 U.S. 150, 238–40, 60 S.Ct. 811, 851–852, 84 L.Ed. 1129 (1940). Second, although we agree with defendant that a new trial is mandated where a party is deprived of a fair trial because counsel has improperly introduced extraneous or unrelated matters to the jury, the test is whether "there is a reasonable probability that the verdict of a jury has been influenced by such conduct" *Twachtman v. Connelly*, 106 F.2d 501, 509 (6th Cir.1939), quoted in *City of Cleveland v. Peter Kiewit Sons Co.*, 624 F.2d 749, 756 (6th Cir.1980). In making this determination, the trial court must look to the totality of the circumstances, including the nature and frequency of the challenged comments, the possible relevancy to the critical jury questions, the way in which the comments were treated by the parties and the Court, the strength of the case, and the verdict itself. *City of Cleveland*, 624 F.2d at 756. The comment to which Scovill objects was made in the rebuttal portion of closing argument. Our review of all counsels' closing arguments persuades us that the remark was an appropriate response to

defense counsel's use of the evidence in his own closing argument.[10]

Because of the multiple grounds raised by defendant in support of its motion for a new trial, we feel obliged to consider whether the cumulative effect of these errors, if any, was to deprive defendant of a fair trial. To address adequately each of defendant's objections, we scrutinized the record. We have also relied upon our own impressions of the witnesses and the evidence during the trial. These were difficult cases, with multiple legal and factual issues. All parties had the benefit of extraordinarily competent counsel. At all stages of the litigation, the parties cooperated with the Court in developing techniques for trying these cases that would result in a record that was easily reviewable for error and that would permit issues to be separated out and decided singly if necessary. Our own review of that record persuades us that if there were any errors, those errors did not—either singly or cumulatively—so taint the trial that Scovill was rendered a substantial injustice.

Accordingly, we decline to grant defendant's motion for a new trial with the sole exception that the denial of the motion with respect to the award of compensatory damages to Hughes is conditioned upon Hughes' consenting to remit $125,000 of the jury award of compensatory damages in connection with his state law claim.

Accordingly, it is hereby ordered that:

Defendant's motion for a judgment notwithstanding the verdict is denied with respect to all plaintiffs' federal claims and plaintiff Hughes' state claim pursuant to O.R.C. § 1410.17. Defendant's motion for a judgment notwithstanding the verdict with respect to plaintiff Merkel's state claim for wrongful discharge is granted, and judgment is hereby entered for defendant on plaintiff Merkel's state claim.

Defendant's motion for a new trial is denied with respect to all issues. However, with respect to the award of compensatory damages to plaintiff Hughes, the denial of the motion is conditioned upon plaintiff Hughes' consenting to remit $125,000 of that award. If plaintiff Hughes does not consent to the remittitur, the Court shall order a new trial limited to the issue of compensatory damages on plaintiff Hughes' state claim.

SO ORDERED.

---

10. Transcripts of the closing arguments have been filed as docs. 90, 108. Taken out of context, the statement may appear to be inflammatory, but having examined all counsels' closing arguments, we cannot conclude that the jury verdict might have been substantially influenced by the single comment to which defendant objects.